[No. D023822. Fourth Dist., Div. One. Mar. 6, 1996.]

M. LOU MARSH, Plaintiff, v.
MOUNTAIN ZEPHYR, INC., et al., Defendants, Cross-defendants and Respondents;
JOHN C. STEVENSON, Objector and Appellant.

## COUNSEL

Lindley, Lazar & Scales and Richard J. Pekin, Jr., for Objector and Appellant.

Hillsinger & Costanzo, Foster Furcolo, Jr., Greco & Traficante and Peter J. Schulz for Defendants, Cross-defendants and Respondents.

## Opinion

**McDONALD, J.**—John C. Stevenson (Stevenson) appeals a trial court order granting a motion by Mountain Zephyr, Inc., doing business as Crain Co., and Myron Crain (together Crain) to set the hourly fee Crain must pay to Stevenson for Stevenson's deposition testimony as an expert witness for an opposing party. Stevenson was designated as an expert witness by M. Lou Marsh (Marsh) in Marsh's construction defect action against Crain and others. Stevenson contends Code of Civil Procedure[1] section 2034, subdivision (i) precludes the court from establishing the "reasonable" fee that Crain must pay for Stevenson's deposition testimony at an amount lower than his "customary" fee of $360 per hour. He further contends rule 1.5.6(b) of division II of the San Diego County Superior Court Rules[2] was erroneously considered by the court and violated his constitutional due process and equal protection rights. We conclude Stevenson has standing to appeal and that the order is an appealable order. We affirm the trial court's order setting at $250 per hour Stevenson's deposition testimony fee payable by Crain.

### I

### Factual and Procedural Background

On July 5, 1994, Marsh filed an action for construction defect against Crain and others alleging breach of warranty, strict liability, negligence and deceit in the construction of her home. Marsh designated architect Stevenson as an expert witness to testify on Marsh's behalf regarding the nature and extent of the construction defects, the proper methods of repair, the cost of design work for the repairs and the standard of care employed in the design of the home. A declaration by Marsh's counsel stated that Stevenson's "hourly fee for providing deposition testimony is $250.00 per hour." However, Marsh's counsel subsequently informed Crain's counsel that Stevenson's hourly fee for depositions was $360 per hour. Crain's counsel asserted that rule 1.5.6(b) set the fee he was required to pay for deposing Stevenson at $200 per hour. Although the parties could not agree on the hourly fee due Stevenson, on February 28, 1995, Crain proceeded with Stevenson's deposition paying him a fee of $200 per hour with the understanding Crain would later file a motion pursuant to section 2034, subdivision (i) for an order setting the amount of Stevenson's deposition compensation for which Crain is responsible.

On March 7, 1995, Crain moved to set Stevenson's deposition fees, citing the amount of $200 per hour set forth in rule 1.5.6(b). Marsh opposed the

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.
[2]All rule references are to the San Diego County Superior Court Rules unless otherwise specified.

motion asserting section 2034, subdivision (i) requires that Crain pay Stevenson his full fee of $360 per hour for deposition testimony. Pursuant to the provisions of section 2034, subdivision (i), Stevenson was given notice of the motion and he submitted to the court a declaration in opposition to the motion. Stevenson also appeared by counsel in opposition to the motion. In his declaration opposing the motion Stevenson stated he routinely charged $360 per hour for testimony in all cases coming into his office in 1993 and 1994 and had charged that fee on 124 separate occasions, including 86 depositions, 12 trials, 17 mediations and 9 arbitrations. Stevenson's declaration also stated he had charged his clients the same fee for his testimonial services.

Following a hearing, the court on June 27, 1995, issued its order granting Crain's motion and stated in part:

"The court notes that local rule 1.5.6(b) does not create a cap for expert fees but merely clarifies the policy of this court in evaluating the reasonableness of expert deposition fees. The local rule is made within the guidelines of [section] 2034(i)(4) which states that in addition to other factors, the court '*may* also consider the ordinary and customary fees charged by similar experts for similar services within the relevant community and any other factors the court deems necessary or appropriate . . . .' The policy of this court is to consider the ordinary and customary fees charged by similar experts, which the court has found . . . in the case of architects or engineers to be $200 per hour. However, considering all of the factors in [section] 2034(i)(4), the court may certainly permit a higher fee. After considering all of the factors, this court deems the reasonable fee for the deposition testimony of Mr. Stevenson to be $250 per hour.

"The court is cognizant of the efficacy of the general observations of counsel for Mr. Stevenson concerning market values and free enterprise. However, the court also notes that opposing counsel can be compelled to pay exorbitant expert fees to depose a person that the defendant is compelled to question in order to protect their client's interest. That factor is equally offensive as the evil perceived by plaintiff's counsel concerning protracting deposition[s] to run up costs.

"  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"In conclusion, the court wishes to make clear that its ruling is not to be construed as a holding that Mr. Stevenson's charges are unreasonable as to *his* clients. Rather, it is limited to what must be paid by parties who did not hire him and who are compelled to depose him. Insofar as plaintiff's concern

that a ruling of this nature will foster abuse by protracted depositions, the court feels that the use of protective orders, or even better, common sense by attorneys involved will resolve that problem." (Italics original.) We denied Stevenson's petition for writ relief regarding the order. Stevenson, but not Marsh, then filed a notice of appeal.

## II

### STEVENSON HAS STANDING TO APPEAL THE ORDER

We requested supplemental briefing from the parties to address the issue of whether Stevenson has standing to appeal the order. Standing to appeal is "jurisdictional and therefore cannot be waived." (*Life* v. *County of Los Angeles* (1990) 218 Cal.App.3d 1287, 1292, fn. 3 [267 Cal.Rptr. 557].)

Section 902 provides that "[a]ny party *aggrieved* may appeal in the cases prescribed in this title." (Italics added.) Thus, to have standing to appeal, a person generally must be both a party of record and sufficiently "aggrieved" by the judgment or order. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736 [97 Cal.Rptr. 385, 488 P.2d 953].) A person who initially is a nonparty but is aggrieved by a judgment or order may become a party of record and obtain a right to appeal by moving to vacate the judgment or order pursuant to section 663. (5 Cal.3d at p. 736; *Bates* v. *John Deere Co.* (1983) 148 Cal.App.3d 40, 53 [195 Cal.Rptr. 637, 60 A.L.R.4th 663].) Stevenson concedes he is a nonparty to this action, and the record is devoid of any motion by him under section 663 to vacate the order in question.

One exception to the "party of record" requirement exists in cases where a judgment or order has a res judicata effect on a nonparty. "A person who would be bound by the doctrine of res judicata, whether or not a party of record, is . . . [entitled] to appeal." (*Leoke* v. *County of San Bernardino* (1967) 249 Cal.App.2d 767, 771 [57 Cal.Rptr. 770]; see *Life* v. *County of Los Angeles, supra,* 218 Cal.App.3d at p. 1292; *Slaughter* v. *Edwards* (1970) 11 Cal.App.3d 285, 291 [90 Cal.Rptr. 144].) To be sufficiently "aggrieved" to qualify for appeal standing, a person's rights or interests must be injuriously affected by the judgment or order, and those rights or interests " ' "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment . . ." ' . . ." or order. (*County of Alameda* v. *Carleson, supra,* 5 Cal.3d at p. 737, citations omitted.) Thus, a basis for Stevenson's standing to appeal is that the order is binding on him and its injurious effect is immediate, pecuniary and substantial. (*Leoke* v. *County of San Bernardino, supra,* at p. 771.)

The record shows the order expressly granted Crain's motion and set Crain's liability at $250 per hour for Stevenson's deposition testimony. The order was binding not only on the parties of record, but also on Stevenson, by resolving the amount of Crain's liability for payment of Stevenson's deposition fees[3] under section 2034, subdivision (i). Furthermore, by setting Stevenson's deposition testimony fee at less than that sought, the injurious effect of the order on Stevenson was immediate, pecuniary and substantial. We note the court stated it was not ruling that Stevenson's charges to his client Marsh were unreasonable. The order did not limit or set the fees Stevenson could charge his client Marsh for his deposition testimony. By its terms, section 2034 does not preclude an expert witness from charging his or her own client, or prevent a party who engages an expert witness from paying the expert, the difference between the expert's customary testimonial fees and any limitation on a deposing party's liability for those fees imposed by a court under section 2034, subdivision (i)(4). Nevertheless, as between Crain and Stevenson, Stevenson became obligated to give his deposition testimony for a fee payable by Crain of less than he stated was his customary fee, which had an immediate, pecuniary and substantial injurious effect on Stevenson, and the order is res judicata on that issue.

It also appears that the procedure set forth in section 2034, subdivision (i) contemplates that the expert witness would have standing to appeal the order setting the expert witness deposition fee payable by the other party. Upon challenge to the fee, the expert witness must be given notice of the motion and the expert witness is entitled to provide the information required in an attempt at informal resolution of and in opposition to the motion, whether or not the party designating the expert witness chooses to do so.[4] In addition, the court may impose a monetary sanction against not only a party or attorney but also any *person* who unsuccessfully opposes a motion under section 2034, subdivision (i) to set the expert witness fee. Any *person* would include the expert witness. The procedure for fee determination and the possible sanctions against the expert witness appear to make the expert

---

[3]As we discuss below, section 2034, subdivision (i)(2) provides that a deposing party (e.g., Crain) must pay the "reasonable and customary" hourly fee for deposing the other party's expert witness (e.g., Stevenson), and section 2034, subdivision (i)(4) provides a mechanism for the deposing party to obtain a court determination of the "reasonable" hourly fee of the other party's expert witness.

[4]Section 2034, subdivision (i)(4) provides in part:

". . . Notice of this motion shall also be given to the expert. In any . . . attempt at an informal resolution either the party or the expert shall provide the other with . . . [information].

"In addition to any facts or evidence, the expert or the party designating the expert shall provide, and the court's determination as to the reasonableness of the fee shall be based upon . . . [certain information]."

witness a "party" to the motion although not a party to the underlying action. We conclude that the expert witness, as a party to the motion, has standing to appeal the order resulting from the motion. (See *Bauguess* v. *Paine* (1978) 22 Cal.3d 626, 634, fn. 3 [150 Cal.Rptr. 461, 586 P.2d 942]; see also *Brun* v. *Bailey* (1994) 27 Cal.App.4th 641, 650 [32 Cal.Rptr.2d 624]; *Barton* v. *Ahmanson Developments, Inc.* (1993) 17 Cal.App.4th 1358 [22 Cal.Rptr.2d 56].)

We conclude that Stevenson has standing to appeal the order setting his deposition testimony fee payable by Crain.[5]

## III

### THE ORDER IS AN APPEALABLE ORDER

■ Generally there is no right of appeal except from a final judgment or final order. The appealability of the judgment or order is jurisdictional and an attempt to appeal from a nonappealable judgment or order will ordinarily be dismissed. (See generally, Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1995) ¶¶ 2:5, 2:15 to 2:38, pp. 2-2, 2-10 to 2-17; Cal. Appellate Practice Handbook (5th ed. 1995) §§ 1.1 to 1.10, pp. 1-3.) A final judgment is "the final determination of the rights of the parties in an action or proceeding." (§ 577.) An order is a written direction of a court not included in a judgment. (§ 1003.) Generally an order is not a final order until the final judgment in the matter has been entered. "Unless otherwise provided by statute, an appeal lies only from a judgment that terminates the proceedings in the lower court by completely disposing of the matter in controversy [citations]." (*Henneberque* v. *City of Culver City* (1985) 172 Cal.App.3d 837, 841 [218 Cal.Rptr. 704].)

■ Because there is no final judgment in this matter, the issue is whether the order from which the appeal has been taken fits within an exception to the one final judgment rule codified in section 904.1. (See *Kinoshita* v. *Horio* (1986) 186 Cal.App.3d 959, 962-963 [231 Cal.Rptr. 241].) A recognized exception to the "one final judgment" rule is that an interim order is appealable if:

1.  The order is collateral to the subject matter of the litigation,

2.  The order is final as to the collateral matter, and

---

[5]We presume Marsh, as a party of record and authorized to oppose the motion, would also have standing to appeal the order. However, because of Marsh's failure to file a notice of appeal regarding the order, there is no pending appeal by Marsh.

3. The order directs the payment of money by the appellant or the performance of an act by or against appellant. (*Sjoberg* v. *Hastorf* (1948) 33 Cal.2d 116, 119 [199 P.2d 668]; see Eisenberg et al., Cal. Practice Guide: Civil Appeals & Writs, *supra*, at ¶¶ 2.76-2:80.1, pp. 2-35 to 2-37; Cal. Appellate Practice Handbook, *supra*, § 1.3, p. 1.)

In this case the order from which the appeal is taken is clearly collateral to the subject matter of the litigation and is final as to the collateral matter. It is less clear that the order satisfies the third element of the *Sjoberg* test. The order does not direct payment of money by the appellant and does not specifically direct the performance of an act by or against the appellant. Although there appears to be a division of opinion and split of authority on the necessity of complying with the third element of the *Sjoberg* test (compare *Samuel* v. *Stevedoring Services* (1994) 24 Cal.App.4th 414, 417-418 [29 Cal.Rptr.2d 420]; and *International Typographical Union etc. Pension Plan* v. *Ad Compositors, Inc.* (1983) 142 Cal.App.3d 733, 735 [191 Cal.Rptr. 227] with *Henneberque* v. *City of Culver City, supra,* 172 Cal.App.3d at p. 841, fn. 3 and cases cited; and *Trimble* v. *Steinfeldt* (1986) 178 Cal.App.3d 646, 649, 650 [224 Cal.Rptr. 195]), we are of the opinion that the third element effectively has been satisfied in this case. Had Stevenson refused to proceed with his deposition upon nonpayment of his requested customary fee and the matter then been submitted to the trial court in accordance with section 2034, subdivision (i), the trial court in connection with the fee-setting motion could have ordered sanctions against Stevenson (§ 2020), including a contempt of court sanction or a monetary sanction (§§ 2023, 2034, subd. (i)). The sanction and fee-setting order could directly order the payment of money or performance of an act by Stevenson, which would satisfy the third element of the *Sjoberg* test and therefore have been appealable at that time.[6] The cooperation of the expert witness by voluntarily proceeding with the deposition subject to the later determination of the reasonableness of the witness fee in accordance with section 2034, subdivision (i) rather than refusing to be deposed until the fee issue is resolved and subjecting himself to possible sanctions should not deprive the expert witness of the right to appeal the trial court's order setting the fee. No useful purpose would be served by requiring the witness to refuse to be deposed and possibly incur discovery sanctions or wait until the final judgment in the underlying litigation before seeking appellate review of the order setting his fee. Furthermore, none of the policy considerations in support of the

---

[6]Discovery sanctions generally are not appealable pursuant to the final collateral order exception to the final judgment rule. (See *Barton* v. *Ahmanson Developments, Inc., supra,* 17 Cal.App.4th 1358, 1360.) However, a monetary sanction order in excess of $5,000 against a party or the party's attorney appears to be appealable pursuant to section 904.1, subdivision (a)(12). It has also been held that a monetary discovery sanction order against a person who is neither a party nor the party's attorney is appealable by the person sanctioned. (*Barton* v. *Ahmanson Developments, Inc., supra,* at pp. 1360-1362.)

"one final judgment rule" as set forth in *Kinoshita* v. *Horio, supra,* 186 Cal.App.3d at page 967 is violated by permitting the appeal in this case. As stated in a similar situation: "[I]t is hardly fair to hold appellant in some kind of judicial penalty box while the underlying case proceeds without him. Appellant's particular problem is ripe for determination, and no purpose is served by delaying its resolution." (*Barton* v. *Ahmanson Developments, Inc., supra,* 17 Cal.App.4th at p. 1361.) We conclude the order setting an expert witness's deposition testimony fee under section 2034, subdivision (i) is an appealable order.

IV

### The Court Properly Set Crain's Liability for Stevenson's Deposition Fees Pursuant to Section 2034

Pursuant to section 2034, subdivision (i)(2) a party is entitled to depose the other party's expert witness, and the deposing party "shall pay the expert's reasonable and customary hourly or daily fee." Stevenson asserts this provision mandates that Crain must pay him the fee he customarily charges for his testimony because his ability customarily to charge that fee conclusively establishes its "reasonableness." However, Stevenson concedes this question is one of first impression and does not cite any authority supporting his position. Our analysis of section 2034 is that an expert witness's "customary" fee is not necessarily the "reasonable" fee *a deposing party* must pay for deposing another party's expert witness.

#### A. *Section 2034*

Section 2034, subdivision (i)(2) provides in part: "The party taking the deposition shall either accompany the service of the deposition notice with a tender of the expert's fee based on the anticipated length of the deposition or tender that fee at the commencement of the deposition. The expert's fee shall be delivered to the attorney for the party designating the expert. If the deposition of the expert takes longer than anticipated, the party giving notice of the deposition shall pay the balance of the expert's fee within five days of receipt of an itemized statement from the expert. The party designating the expert is responsible for any fee charged by the expert for preparing for the deposition and for traveling to the place of the deposition, as well as for any travel expenses of the expert." Thus, the procedure established by section 2034, subdivision (i)(2) is for the deposing party to pay to the other party's attorney the "reasonable and customary" hourly or daily fee of the other party's expert for deposition testimony.

In the event the deposing party believes the expert's hourly or daily fee is unreasonable, section 2034, subdivision (i)(4) provides a mechanism for the

court to resolve the dispute and set the fee which the deposing party must pay for deposing an expert witness of the other party. Section 2034, subdivision (i)(4) provides in part:

"If a party desiring to take the deposition of an expert witness under this subdivision deems that the hourly or daily fee of that expert for providing deposition testimony is unreasonable, that party may move for an order setting the compensation of that expert. . . .

"In addition to any other facts or evidence, the expert or the party designating the expert shall provide, and the court's determination as to the reasonableness of the fee shall be based upon (A) proof of the ordinary and customary fee actually charged and received by that expert for similar services provided outside the subject litigation, (B) the total number of times the presently demanded fee has ever been charged and received by that expert, and (C) the frequency and regularity with which the presently demanded fee has been charged and received by that expert within the two-year period preceding the hearing on the motion. Provisions (B) and (C) shall apply to actions filed after January 1, 1994. *The court may also consider the ordinary and customary fees charged by similar experts for similar services within the relevant community and any other factors the court deems necessary or appropriate to make its determination.*

"Upon a determination that the fee demanded by that expert is unreasonable, and based upon the evidence and factors considered, the court shall set the fee of the expert providing testimony." (Italics added.)

As shown by the above italicized language, a court may consider the fees usually charged by similar experts for testimonial services and any other factors the court deems appropriate in establishing the "reasonable" fee a deposing party must pay for deposing another party's expert witness.

However, nothing in section 2034, subdivision (i)(2) or subdivision (i)(4) provides that a court's determination of the "reasonable" fee a deposing party must pay for deposing an expert witness precludes that expert witness from charging or receiving from his or her client any balance or "unreasonable" portion of his or her fee. On the contrary, we conclude section 2034 transfers to the deposing party only those fees of the expert to the extent they are "reasonable." Any fees charged by the expert in excess of the "reasonable" fee determined by the court remain a matter of negotiation and agreement between the expert witness and the party that designated the expert witness. We note section 2034, subdivision (i)(4) already expressly provides for the designating party to pay the expert witness's fees for preparing for and traveling to the deposition, as well as the travel expenses

of the expert witness. Those fees and costs of the expert witness's deposition are not "transferred" to the deposing party. Similarly, the balance or "unreasonable" portion of an expert witness's hourly or daily fees for deposition testimony is not "transferred" to the deposing party and remains a matter between the expert witness and the designating party.[7]

### B.  *Rule 1.5.6(b)*

In this case Crain moved to limit his liability for Stevenson's fees for his deposition testimony. Crain cited rule 1.5.6(b) to limit his responsibility for Stevenson's fees to $200 per hour. Rule 1.5.6(b) reads in part:

"Excessive expert fees are limiting access to the Courts and undermining the quality of justice. It is the policy of this Court that in addition to the criteria required to be considered in deciding motions brought pursuant to [section] 2034(i)(4), this Court will consider the ordinary and customary fees charged by similar experts for similar services within the relevant community. Based on the collective experience of this Court, the following hourly rates appear to be representative of the ordinary and customary fees charged for expert testimony in this community:

". . . [$]200 engineers, architects . . . ."

Contrary to Stevenson's assertion, neither section 2034 nor rule 1.5.6(b) establishes a "limit" on an expert witness's fees based on what fees similar experts customarily charge. Rather, the level of fees customarily charged by similar experts is merely one factor a court may consider in determining the "reasonable" hourly or daily fee a deposing party must pay for deposing another party's expert witness. Here the court recognized that rule 1.5.6(b) determined the customary hourly fee charged by local architects for their depositions as expert witnesses to be $200 per hour. After considering this information along with the other evidence submitted, the court determined Stevenson's "reasonable" hourly fee for deposition testimony was $250 per hour. Obviously, the court did not interpret rule 1.5.6(b) as placing a $200 per hour "limit" on the fees architects can reasonably charge for their deposition testimony because it set the rate for Stevenson higher than the customary rate specified in rule 1.5.6(b). Furthermore, the court clearly did not indicate that rule 1.5.6(b) in any way limited the amount of the testimonial fees architects could charge their clients.

■  We reject Stevenson's contention that the court erred in considering rule 1.5.6(b) because that rule purportedly (i) was properly the subject of

---

[7]We believe that it is this limitation of "reasonableness" under section 2034 to which the court referred regarding the "balancing" of interests between the two parties and limiting the fee Crain must pay for deposing Stevenson.

legislative, and not judicial, action; (ii) violated his due process rights because he had no opportunity to present evidence or otherwise challenge the rule before it was adopted; and (iii) violated his equal protection rights because it discriminates against "highly skilled and highly compensated experts" like himself. Stevenson fails to cite any case that holds local court rules similar to rule 1.5.6(b) are invalid based on any of these grounds.[8]

The fundamental premise of Stevenson's challenge to rule 1.5.6(b) is the assumption that the rule determines the compensation a private person, in this case an architect, may charge and receive for his services. Because the premise is incorrect, the challenge is not well taken. Rule 1.5.6(b) does not purport to limit fees which may be charged by expert witnesses; it only sets forth fees which "appear to be representative of the ordinary and customary fees charged for expert testimony in this community [,]" which is one of the factors to be considered in a section 2034, subdivision (i)(4) fee determination. This factor is considered not for the purpose of determining what the expert witness may charge but for the purpose of determining what the opposing party must pay for the deposition testimony of the expert witness. Absent the requirements of section 2034, subdivision (i) the deposing party would not be required to pay any deposition testimony fee to an expert witness for the opposing party; the expert witness would charge his client for his fees. The requirement imposed by section 2034, subdivision (i), implemented in part by rule 1.5.6(b), which requires the deposing party to pay some of the fees of the expert witness for the opposing party, can therefore be considered a partial relief to the designating party of the deposition costs of the party's expert witness. Viewed as part of a cost-sharing arrangement rather than a maximum-fee-schedule directive, rule 1.5.6(b) does not infringe on any constitutional rights of the expert witness.

We conclude rule 1.5.6(b) is a valid local court rule[9] consistent with and implementing section 2034, subdivision (i)(4), which merely reflects the collective experience of the many fine jurists of the San Diego County Superior Court who determined that $200 per hour was the "ordinary and customary fee[] charged by similar experts [i.e., architects] for similar services [i.e., deposition testimony] within the relevant community [i.e., San Diego County]" as one factor to be considered in compliance with section 2034, subdivision (i)(4) in determining the "reasonable" hourly fee a party must pay for deposing an expert witness for another party.

---

[8]For example, rule 6.1 contains a schedule of attorney fees to be awarded by the court in both default and contested matters and rule 1.78 sets the real estate brokerage commission to be awarded by the court in probate real property sales.

[9]Local court rules are authorized and governed by Government Code section 68070, section 575.1 and California Rules of Court, rule 981. Appellant does not contend that rule 1.5.6(b) was not adopted in accordance with or is otherwise infirm pursuant to the statutory and California Rules of Court provisions relating to the adoption of local court rules.

## C. *Discretion of Trial Court*

■ Finally, Stevenson asserts substantial evidence does not support the court's determination that his "reasonable" hourly fee was $250 per hour for purposes of Crain's liability to pay him for his deposition testimony. His basis for this contention is that the order noted that his "consulting fee is $120 per hour." He contends the court was confused regarding the correct rate for his "consulting" and points to his declaration which states he charges "$120 per hour for direct work on construction documents and $240 for consulting work, which is everything that is not testimonial work or direct work on construction documents." Perhaps the court may have misinterpreted work on construction documents as "consulting" work or otherwise misread Stevenson's declaration, but in any event the $120 per hour factor was merely one of many factors considered by the court. The court presumably considered Stevenson's declaration which stated he had charged and received $360 per hour for his testimonial services on 124 occasions. However, the court also noted its familiarity with Stevenson over a period of 20 years. The court also considered the collective experience of the local superior court judges in the form of rule 1.5.6(b) which determined $200 per hour was the "ordinary and customary fee" charged by similar architectural experts in San Diego County, another factor permissibly considered by the court in a to section 2034, subdivision (i)(4) fee determination.

Although Stevenson argues the expert witness deposition fee set by the court in accordance with section 2034, subdivision (i)(4) must be supported by substantial evidence, we view the determination as being within the sound discretion of the trial court. Section 2034, subdivision (i) does not directly state that the fee determination is discretionary or must be supported by substantial evidence. However, we note that section 2034, subdivision (i)(4) specifically permits the trial court to consider "any other factors the court deems necessary or appropriate to make its determinations." Clearly, it is within the trial court's discretion to determine which "other factors" it will consider. If the other factors to be considered are within the trial court's discretion, then it follows that the fee determination itself must be within the trial court's discretion.

Further, in other but similar contexts in which the court is required to determine the reasonableness of fees to be awarded, the determination is usually considered to be within the discretion of the trial court. For example, when reasonable attorney fees may be awarded to a party, either by agreement or by statute, the amount of the award is generally held to be within the sound discretion of the trial court. (See *County of Kern* v. *Ginn* (1983) 146 Cal.App.3d 1107, 1114-1115 [194 Cal.Rptr. 512]; *Melnyk* v. *Robledo* (1976)

64 Cal.App.3d 618, 623 [134 Cal.Rptr. 602].)[10] "The appellate court should interfere [with the trial court's determination] only if it finds that, under all the evidence viewed most favorably in support of the trial court's decision, no judge could reasonably have made the challenged order." (*County of Kern v. Ginn, supra*, at p. 1115.) We discern no reason why the same standard of review should not be applicable to the determination by the trial court of reasonable expert witness fees pursuant to section 2034, subdivision (i).

We doubt that "reasonableness" of an expert witness's hourly fee for purposes of section 2034 means whatever fee that expert "customarily" charges. If an expert is able "customarily" to charge a fee of $1,500 per hour to his or her clients, does this mean that this fee is conclusively deemed "reasonable" under section 2034, subdivision (i) and opposing parties must pay that fee to depose the expert? We think not. Rather, the expert's "customary" hourly fee (e.g., $360 or $1,500 per hour) for deposition testimony is merely one factor in determining what a "reasonable" fee is under section 2034, subdivision (i). That determination is within the sound discretion of the trial court. Stevenson fails to show that the trial court abused its discretion in this case.

## DISPOSITION

The order is affirmed.

Kremer, P. J., and Haller, J., concurred.

---

[10]Rule 6.1 provides in part that "Reasonable attorney's fees in contested actions should be determined by the court in its discretion."