Filed 10/21/13  Wait v. Wait CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| REXFORD WAIT,<br><br>          Plaintiff and Appellant,<br><br>v.<br><br>STEPHEN POWERS WAIT,<br><br>          Defendant and Respondent. | A134751<br><br>(Alameda County<br>Super. Ct. No. RP 11608824) |

Stephen Powers Wait, trustee of his mother's trust, petitioned for instructions concerning the effect of a "disclaimer" by his brother Rexford James Wait, disclaiming his interest in the trust in favor of his two daughters.  Rexford filed objections, and a hearing was held before the probate court, with separate counsel appearing for Stephen, Rexford, and his daughters.  The court ruled for Stephen, and Rexford appeals.  We affirm.

**BACKGROUND**

Beverly June Wait entered into the Beverly June Wait Living Trust (Trust) on December 15, 2007.  Beverly was a single woman with two living children:  Stephen and Rexford.[1]  The trust named Beverly as trustee, with Stephen as successor trustee if she should cease to act.

The beneficiary provisions were contained in paragraph 6.F. of the trust, entitled "Distributions at my Death."  There, Beverly left 65 percent to Stephen (in

_____

[1] As is common in probate matters, we refer to the participants by their first names.  No disrespect is intended.

1

paragraph 6.F.(3)) and 35 percent to Rexford (in paragraph 6.F.(5)).[2] Those distributions were on condition that the son survive Beverly, and if not, his distribution shall fail and be added to the residue of the trust estate. Paragraph 6.F.(3) [*sic*] governs the distribution of the residue, providing that the remainder be divided into "as many equal shares as there are sons of mine then living and sons of mine then deceased with issue then living." Beverly also gave instructions for distribution of her personal property, leaving all listed items to Stephen.

On October 4, 2010, Rexford executed a "Disclaimer" in which he "disclaimed all of my interest" in the Trust. The disclaimer, he noted, was made pursuant to Division Two, Part 8 (beginning with section 260) of the California Probate Code "and constitutes a 'Qualified Disclaimer' under the Internal Revenue Code." The disclaimer was made for the benefit of Rexford's two daughters, Geena Wait and Kierstin Ross (when referred to collectively, the daughters).

Following Beverly's death, Stephen became trustee, and on December 19, 2011, he filed a petition for instructions (Prob. Code, §§ 17200 (a)(b)(1), (b)(6)). It asserted as follows:

"5. An issue of interpretation of the trust instrument has arisen with the beneficiaries, requiring instructions from the court: Beverly June Wait's son, and brother of Petitioner, Rexford Wait, disclaimed his interest in the trust, which was a 35% interest . . . Rexford Wait's two daughters, Geena Wait and Kierstin Ross, become beneficiaries of the trust by virtue of the disclaimer, but there is a dispute regarding the reduction of the disclaimed share from 35% to 17.5%, due to the treatment of the person disclaiming as having predeceased the trustor.

"6. The trust instrument does not make any provision for the specific disposition of the disclaimed interest. Probate Code section 282(a)(1) provides that where there is no

---

[2] There is no paragraph 6.F.(4), which is apparently a typographical error. There is a second paragraph 6.F.(3) which follows paragraph 6.F.(5), which will be distinguished hereafter from paragraph 6.F.(3) leaving 65 percent of the trust to Stephen, by the reference of "6.F.(3) [*sic*]."

2

specific disposition for a disclaimed interest, the disclaimed interest shall 'descent, go, be distributed, or continue to be held . . . as if the disclaimant had predeceased the creator of the interest.'  The trust provides that if Rexford Wait predeceases his mother, his share is added to the residue of the estate (paragraph 6.F(5) [*sic*].  Paragraph 6.F(3) [*sic*] provides that the remainder of the trust is to be allocated one (1) share to each living son and one (1) share to each 'group composed of the then-living issue of a deceased son' to be distributed by right of representation

"7.  Petitioner's position is that Geena Wait and Kierstin Ross are entitled to 17.5% of the trust (total), and that the other half of the disclaimed interest goes to Petitioner as the 'living son,' as set forth in paragraph 6F(3) [*sic*].  Accordingly, Petitioner is entitled to 65% of the trust under paragraph 6F(3), and an additional 50% of the disclaimed interest of 35% (or 17.5%) for a total of 82.5% of the trust assets."  Hearing on the petition was set for January 31, 2012.

The petition was accompanied by Stephen's declaration and a "Memorandum of Points and Authorities Re: Effect of Disclaimer."  The petition and accompanying papers were served on Rexford and his daughters, all of whom had counsel:  Leon Katz for Rexford and Bette B. Epstein for the daughters.

On January 24, 2012, Rexford filed verified objections to the petition, confirming his motive for disclaiming was "for his two daughters to receive his portion."  No papers were filed on behalf of the daughters.

The petition came on for hearing as scheduled before the Honorable Cecilia Castellanos, with all interested parties apparently represented by counsel.[3]  Judge Castellanos took the matter under submission.  On February 1, 2012, she issued a detailed, five-page order, ruling for Stephen, concluding that he "is entitled to 82.5

_____

[3] We say apparently because there is no reporter's transcript of the hearing, and the minute order twice reflects that Stephen was represented by attorney Neal and the daughters by attorney Epstein.  We assume this was in error, and that one reference to Stephen and Neal should have been to Rexford and attorney Katz.

percent of the Trust assets and [the daughters] are entitled to 17.5 percent. . . .” On February 28, 2012, Rexford filed a notice of appeal. The daughters have not appealed.

On April 9, 2012, after the record on appeal was filed, Stephen filed a motion to dismiss the appeal on the ground that Rexford does not have standing. We denied the motion without prejudice, indicating we would decide it with the appeal itself. We now decide that Rexford does have standing to appeal. And that his appeal has no merit.

## DISCUSSION

### Rexford Has Standing To Appeal

As indicated, Stephen raises a threshold issue, asserting that Rexford has no standing to appeal, that only his daughters do, that only they are "aggrieved parties."

We begin by acknowledging that Stephen's boilerplate is accurate, and we quote it here (without all supporting authorities). Thus:

"Code of Civil Procedure section 902 states, 'Any party *aggrieved* may appeal in the cases prescribed in this title [appeals in civil actions].' (Emphasis added.) There is no question that this rule applies to appeals from probate court orders. (See, e.g., *Crook v. Contreras* (2002) 95 Cal.App.4th 1194, 1201; *Estate of Goulet* (1995) 10 Cal.4th 1074, 1079, 1081-1082.)

"A party is considered 'aggrieved' when his rights or interests are injuriously affected by the judgment or order. (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737. Appellant's interest in the matter 'must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment [or order].' [Citation.] (*County of Alameda v. Carleson, supra* at p. 737.)

"The issue of whether a party has standing to appeal is a question of law. (*IBM Personal Pension Plan v. City and County of San Francisco* (2005) 131 Cal.App.4th 1291, 1299. Standing to appeal is jurisdictional and cannot be waived. (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295.) Thus, if a party lacks standing to appeal, this court has no jurisdiction to consider the appeal, and it must be dismissed."

We conclude that such boilerplate does not describe the situation here.

4

It is probably enough to say that Stephen served his petition on Rexford; that Rexford filed opposition to the petition, without objection from Stephen; and that Rexford appeared at the hearing, apparently without opposition from Stephen. To now allow Stephen to assert that Rexford may not participate strikes us as fundamentally unfair. Not to mention barred by the principle that theories not raised in the trial court cannot be asserted for the first time on appeal, a rule based on principles of fairness, estoppel, and waiver. (See generally *Giraldo v. California Dept. of Corrections and Rehabilitation* (2008) 168 Cal.App.4th 231, 251; *Greenwich S.F., LLC v. Wong* (2010) 190 Cal.App.4th 739, 767; *Doers v. Golden Gate Bridge Etc. Dist.* (1979) 23 Cal.3d 180, 184-185 [waiver].)

Beyond all that, many cases recognize that one is an aggrieved party when a ruling below has an adverse impact on him or her, even if they were not a party. (See, for example, *Marsh v. Mountain Zephyr, supra,* 43 Cal.App.4th 289 [nonparty expert witness aggrieved by order setting fee]; *Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336 [parent corporation obligated to pay judgment against subsidiary]; *People v. Hernandez* (2009) 172 Cal.App.4th 715, 720 [pawnbrokers, nonparties to criminal action, aggrieved by ex parte order to release stolen property]; *In re FairWageLaw* (2009) 176 Cal.App.4th 279, 285.)

Here, as noted, Rexford was a party, and argued that his disclaimer should not affect his distributive share of the trust—a disclaimer, it is fair to say, he would not have executed if he knew its effect. He was, in short, aggrieved.

**Judge Castellanos Properly Applied Probate Code Section 282**

Probate Code section 282 deals with the disposition of a disclaimed interest, providing in pertinent part as follows: "(a) Unless the creator of the interest provides for a specific disposition of the interest in the event of a disclaimer, the interest disclaimed shall descend, be distributed, or continue to be held (1) as to a present interest, as if the disclaimant had predeceased the creator of the interest . . . ."

That provision is simple and straightforward. This is how the leading practical treatise describes it: "**Effect on distribution** [¶] (a) [16:500] **General rules** Unless

5

decedent's will expressly states how disclaimed property shall be distributed, a disclaimed interest must be distributed as follows [Prob.C. §282(a)]: [¶] 1) [16.501] **Present interest:** Present interests are to be distributed as if the disclaiming party had predeceased the testator . . . ." (Ross, Cal. Practice Guide: Probate (The Rutter Group 2012) § 16:500 et seq., p. 16-156.)

This is how it is put in Witkin: "(2) *Disposition of Disclaimed Interest.* Unless the creator of the interest provides for a specific disposition of the interest, it 'shall descend, go, be distributed, or continued to be held' as follows: [¶] (a) *Present interest:* 'as if the disclaimant had predeceased the creator of the interest.' (Prob.C. 282(a)(1).)" (14 Witkin, Summary Cal. Law (10th ed. 2005) Wills and Probate, § 339, p. 427.)

Subdivision (b) of section 282 provides two exceptions, the first of which is as follows: "(b) Notwithstanding subdivision (a), where the disclaimer is filed on or after January 1, 1985: [¶] (1) The beneficiary is not treated as having predeceased the decedent for the purpose of determining the generation at which the division of the estate is to be made under Part 6 (commencing with Section 240) or other provision of a will, trust, or other instrument."

Rexford contends that Judge Castellanos erred in construing section 282, an argument that focuses on subdivision (b) quoted above, an argument he makes at length and in varied language. Specifically, Rexford highlights the language that "[t]he beneficiary is not treated as having predeceased the decedent for the purpose of determining the generation at which the division of the estate is to be made under Part 6 (commencing with Section 240) *or other provision of a will, trust, or other instrument.*" (Emphasis added). Rexford argues that "It is significant, that §282(b)(1) was revised in 1984. That amendment [¶] 'broadened paragraph (1) of subdivision (b) by deleting the former limitation in that paragraph to disclaimers of 'an interest created by the intestate succession' and by applying the paragraph to situations where the division is made under any 'other provision of a will or trust.' "

As Rexford puts it at another point: "The final clause of §282(b)(1) states, 'or other provision of a will, trust or other instrument.' When read with the first part of

§282(b)(1), this clause operates to treat Rexford as having *survived* the creator of the Trust for the purpose of applying other provisions of the Trust. This clause was added by amendment in 1984, superseding the *Estate of Bryan* (1983) 149 Cal.App.3d 323, 335) cited in the Order After Hearing. [Citation.] In doing so, Judge Castellanos ignored this last clause altogether."

Or, as Rexford puts it in his reply brief: "There is no question that the statutory conditions for this exception [in subdivision (b)] are satisfied. [Stephen] has admitted that, 'It is undisputed that the Trust in this case does not provide any specific disposition of a disclaimed interest.' [Citation.] Therefore, the primary clause of Probate Code §282(b)(1) is operative and must, as a matter of law, be given effect. That provision is unequivocal. 'The beneficiary [Rexford Wait] *is not treated as having predeceased the decedent* for the purpose [of Probate Code 240] *or other provision of a will, trust*, or other instrument.' (Emphasis added.). In this case, the only other provision of the Trust that has been called into play by Respondent is the residual provision of the Trust which, if applicable, would dilute the share passing to Appellant's children and augment the share passing to the Trustee. Because, Appellant must be treated as having survived the decedent, the residual clause of the Trust does not apply and has no force or effect in this case."

We read the exception much differently, and reject Rexford's argument.

We cannot better describe what the exception means than does Witkin: "(4) *Exceptions.* Prob.C. 282(b) states the following exceptions: [¶] (a) The beneficiary is not treated as having predeceased the decedent for the purpose of determining the generation at which the division of the estate is to be made under Prob.C. 240 et seq. or other provision of a will, trust, or other instrument. (Prob.C. 282(b)(1).) . . . The purpose of this provision is 'to prevent an heir from disclaiming property for the purpose of increasing the share of his or her line at the expense of other lines of the decedent's descendants.' The statute changes the rule of distribution to the children of a disclaimant enunciated in *Estate of Bryant* (1983) 149 Cal.App.3d 323, (Law Rev. Com. Comment.)" (Witkin, Summary of Cal. Law, *supra,* § 339, p. 428.) This is exactly as noted by Judge

7

Castellanos here: "The clear language and legislative history of section 282(b)(1) illustrates that this provision was addressed at determining the generation at which the division of property was to be distributed. The division of property to be distributed begins in the eldest generation in which there are living people, overruling the court's decision in the *Estate of Bryant*[*, supra,*] 149 Cal.App.3d [at p.] 335. See Cal. Law Rev. Comments to Section 282."

The effect of the revision to paragraph (1) of subdivision (b) was "designed to prevent an heir from disclaiming property for the purpose of increasing the share of his or her line at the expense of other lines of the decedent's descendants." (Law Rev. Com. com., 52 West's Ann. Probate Code, foll. § 282, p. 221.) This is the policy behind the revision, a policy Rexford ignores.

We also note that Rexford misreads the significance of the "or" in subdivision (b). As noted, the subdivision reads, "(b) Notwithstanding subdivision (a), . . . [¶] [t]he beneficiary is not treated as having predeceased the decedent for the purpose of determining the generation at which the division of the estate is to be made under Part 6 (commencing with Section 240) *or* other provision of a will, trust, or other instrument. . . ." (Italics added.) We read the "or" as referring to the "generation at which the division" is to be made, whether such generation is set out in the "Probate Code . . . *or*" the instrument.

In addition, if we understand Rexford's argument accurately, it would mean that section 282 would make no sense. Subdivision (a) would mean he is deemed to have predeceased his mother, and subdivision (b) would mean he was not. Such an interpretation would render section 282 meaningless. This, we have said before, "would be, in statutory interpretation language, an absurd result, which courts must try to avoid." (*Arntz v. Superior Court* (2010) 187 Cal.App.4th 1082, 1094; *Reliable Tree Experts v. Baker* (2011) 200 Cal.App.4th 785, 796 ["when construing statutory language care should be given to whether an interpretation will result in unreasonable or even absurd consequences that the Legislature cannot have intended."].)

Finally, we reject Rexford's argument that the law of intestacy governs the distribution of his original 35 percent interest. Rexford's argument is that his disclaimed interest passes under the "Laws of Intestacy"—an argument, curiously enough, that asserts he should "be treated as failing to survive the transferor." Rexford then cites Probate Code section 21110, subdivision (a), and concludes that the "Laws of Intestacy" must apply if there is a predeceased transferee. Such argument completely ignores the language in section 21110, subdivision (a), which begins that it is "Subject to subdivision (b) . . . ."

Probate Code section 21110, subdivision (b), provides that when there is an "instrument [which] expresses a contrary intention or a substitute disposition," the issue of a deceased transferee do not take in the transferee's place. This is exactly the situation here, where the trust provides for a substitute disposition of a predeceased son's share of the trust estate: if a son predeceased Beverly, his "distribution shall fail and shall be added to the residue of the Trust Estate."

It is undisputed that the Trust does not provide any specific disposition for Rexford's disclaimed 35 percent interest. In such a case, the disclaimed property goes to whomever would have received it, had the disclaimant predeceased the settlor. Here that means it is disposed of as in paragraph 6.F.(3) [*sic*] of the trust: "The Trustee shall divide the remainder of the Trust Estate into as many equal shares as there are sons of mine then living and sons of mine then deceased with issue then living. The Trustee shall allocate one (1) such share to each then-living son and one (1) such share to each group composed of the then-living issue of a deceased son. Each such share shall be distributed, or retained in trust, as hereafter provided . . . ."

Stephen was already entitled to 65 percent of the trust assets under the Trust. And based on the above-quoted substitute disposition, he is entitled to 17.5 percent more, one-half of Rexford's disclaimed 35 percent share, for a total of 82.5 percent. The daughters are entitled to 17.5 percent, the other half of the Rexford's original share. The result: 82.5 percent to Stephen, 17.5 percent to the daughters, just as Judge Castellanos held.

9

**DISPOSITION**

The order of February 1, 2012, is affirmed. Stephen shall recover his costs on appeal.

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Haerle, J.