Filed 4/2/21  Metis TPS v. Cal. Dept. of Public Health etc. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| METIS TPS, LLC,<br><br>    Defendant and Appellant,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, OFFICE OF PROBLEM GAMBLING,<br><br>    Defendant and Respondent. | B302776<br><br>(Los Angeles County Super. Ct. Nos. 18STCV00408, 18STCV04552)<br><br>ORDER MODIFYING OPINION<br><br>NO CHANGE IN JUDGMENT |

THE COURT:*

IT IS HEREBY ORDERED that the opinion filed herein on March 3, 2021, be modified as follows:

1.  On page 2, line 7, "Metis TPS LLC" should be "Metis TPS, LLC."

2.  On page 2, footnote 2, "Pubic" should be "Public."

3.  On page 3, lines 13-14, "problem gambling and prevention" should be "problem gambling prevention."

4. On page 3, line 14, delete the quotation mark after "services."

5. On page 5, line 7, "CGCC-07" should be "CGCC-037."

6. On page 6, line 8, "$1,293,0000" should be "$1,293,000."

7. On page 6, line 13, "problem gambling and prevention" should be "problem gambling prevention."

8. On page 8, footnote 8, add a closing quotation mark at the end of the footnote after "winnings."

There is no change in judgment.

_____

\* LUI, P. J.          ASHMANN-GERST, J.          CHAVEZ, J.

2

Filed 3/3/21  Metis TPS v. Cal. Dept. of Public Health etc. CA2/2 (unmodified opinion)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| METIS TPS, LLC,<br><br>    Defendant and Appellant,<br><br>    v.<br><br>CALIFORNIA DEPARTMENT OF PUBLIC HEALTH, OFFICE OF PROBLEM GAMBLING,<br><br>    Defendant and Respondent. | B302776<br><br>(Los Angeles County Super. Ct. No. 18STCV00408 & 18STCV04552) |

APPEAL from an order of the Superior Court of Los Angeles County, Michael P. Linfield, Judge.  Affirmed.

Sheppard, Mullin, Richter & Hampton, Tracey A. Kennedy, Ryan J. Krueger and Adria K. Harris for Defendant and Appellant.

Xavier Becerra, Attorney General, Sara J. Drake, Senior Assistant Attorney General, T. Michelle Laird, Supervising Deputy Attorney General, James G. Waian, Deputy Attorney General, for Defendant and Respondent.

This appeal concerns entitlement to $1,293,000 won by Tommy Ngo (Ngo) at the Commerce Casino, a gambling establishment operated by plaintiff California Commerce Club, Inc. (Commerce). At the time Ngo won the $1,293,000, he was on a state-wide gambling self-exclusion list. A dispute arose over payment of the winnings, and Commerce filed an action for interpleader and declaratory relief against Ngo, Metis TPS LLC (Metis), and the California Department of Public Health, Office of Problem Gambling (OPG). The trial court ruled that OPG is the only party with a viable claim to the interpleaded funds and issued an order granting OPG's motion for judgment on the pleadings. Metis appeals from that order.

### THE PARTIES

Metis is a third-party provider of proposition player services and acts as the "bank" or "house" for gaming activities at the Commerce Casino. (Bus. & Prof. Code, § 19984.)[1] OPG was established under section 4369 of the Welfare and Institutions Code[2] and is charged with developing and providing statewide prevention and treatment programs and services to address gambling disorders. (Welf. & Inst. Code, §§ 4369, 4369.2; https://www.cdph.ca.gov/Programs/OPG/Pages/about-opg.aspx)

---

[1] Because California law prohibits Commerce Casino, a non-tribal casino, from having a stake in the games that it offers (Pen. Code, §§ 330, et seq.), it retained Metis to provide proposition player services. (Bus. & Prof. Code, § 19984.)

[2] Welfare and Institutions Code section 4369 states: "There is within the State Department of Pubic Health, the Office of Problem Gambling."

# BACKGROUND

Ngo won $1,293,000 playing baccarat at the Commerce Casino on September 28, 2017. Ngo had previously executed, on May 21, 2008, a voluntary self-exclusion request form pursuant to California Code of Regulations, title 4, section 12464[3] allowing him to exclude himself from gambling establishments. Ngo's self-exclusion request form was received by the Bureau of Gambling Control on May 27, 2008. In his self-exclusion request form, Ngo agreed that should he attempt to use the services of a gambling establishment, "any winnings or prizes I may have accrued or losses recovered will be confiscated and remitted by the Gambling Establishment or participating gambling facility for deposit into the Gambling Addiction Program Fund for problem gambling and prevention and treatment services" through the Department of Alcohol and Drug Programs, Office of Problem and Pathological Gambling."[4]

Metis paid Ngo his $1,293,000 in baccarat winnings in chips. When Ngo attempted to exchange the chips for cash at the Commerce Casino, Commerce determined that Ngo was on the statewide self-exclusion list and confiscated Ngo's winnings.

Commerce filed a complaint in interpleader and for declaratory relief in October 2018 against Ngo, Metis, and OPG. The case was consolidated with an action Ngo had filed against Commerce for damages and punitive damages.

---

[3] All further references to regulations are to title 4 of the California Code of Regulations.

[4] The Office of Problem and Pathological Gambling is the predecessor agency to OPG. (See former Welf & Inst. Code, § 4369; Stats. 2003, ch. 210 (A.B. 673, § 3.)

3

OPG filed a motion for judgment on the pleadings as to Commerce's declaratory relief claim, arguing that it was the only party with a viable claim to the $1,293,000. The trial court granted OPG's request for judicial notice of Ngo's self-exclusion form. The trial court concluded, "[b]ased on the allegations in the First Amended Interpleader Complaint and the judicially noticed matters demonstrating Ngo's participation in the Self-Exclusion Request, there are not sufficient facts alleged to demonstrate that Ngo, Metis, and [OPG] are all subject to conflicting viable claims to the Interpleaded Funds. Rather, only [OPG] has a viable claim to the Interpleaded Funds." The court ruled that the interpleader complaint failed to state a cause of action against the interpleader defendants and granted OPG's motion for judgment on the pleadings. This appeal by Metis followed.

## DISCUSSION

### I. Standard of review

A motion for judgment on the pleadings is reviewed de novo, and all properly pleaded material facts are deemed to be true. (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670.)

### II. Statewide self-exclusion program

To assist those with gambling disorders and to promote the prevention of problem gambling, the State of California, in cooperation with California gambling establishments, has implemented a program for responsible gambling. (Cal. Code Regs., tit. 4, ch. 7.) The program for responsible gambling includes a patron self-exclusion program. (§ 12460 et seq.) The self-exclusion program allows those who may be engaging in problem gambling to execute a self-exclusion form, thereby

4

placing themselves on a statewide self-exclusion list maintained by the Bureau of Gambling Control.  (§§ 12460, subd. (a), 12464.)

The current implementing regulations for the self-exclusion program provide in pertinent part:  "Licensees[5] shall implement a program that allows patrons to exclude themselves from gambling establishments using a form entitled Self-Exclusion Request, form CGCC-07 (Rev. 07/17), attached in Appendix A to this chapter.  That program shall contain, at a minimum, the following: [¶] . . . [¶] Policies and procedures for the forfeiture of any unredeemed jackpots or prizes won by an excluded person and the remittance of the combined value for deposit into the Gambling Addiction Program Fund for problem gambling prevention and treatment services through the State Department of Public Health, Office of Problem Gambling . . . ." (§ 12464, subd. (a)(5).)

## III.  Standing

We reject OPG's argument that Metis lacks standing to appeal.  To have standing to appeal, a person generally must be a party of record and sufficiently aggrieved by the judgment or order.  (*Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 295.)  "One is considered 'aggrieved' whose rights or interests are injuriously affected by the judgment." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 737.)  Metis meets both criteria.

Metis was a party of record in the interpleader action.  Its answer to the interpleader complaint includes statements asserting its right of recovery against OPG and Ngo.  OPG's disagreement with the legal basis for Metis's claimed entitlement

---

[5]    A licensee is the holder of a license to operate a gambling business.  (§§ 12220, subd. (b)(13), 12233-12239.)

to the interpleaded funds does not deprive Metis of standing to challenge the trial court's order. Metis is sufficiently aggrieved by the order granting OPG's motion for judgment on the pleadings and releasing the interpleaded funds to OPG.

## IV. Disposition of interpleaded funds

The trial court properly determined that Metis has no viable claim to the interpleaded funds. The terms of the self-exclusion form executed by Ngo require the $1,293,0000 to be forfeited to OPG. Ngo expressly agreed that "any winnings or prizes I may have accrued or losses recovered will be confiscated and remitted by the Gambling Establishment or participating gambling facility for deposit into the Gambling Addiction Program Fund for problem gambling and prevention and treatment services . . . ." The Gambling Addiction Program Fund is currently managed and maintained by OPG. (§ 12464, subd. (a)(5).)

Metis does not dispute that Ngo executed the self-exclusion form, that Ngo was on the statewide self-exclusion list at the time he won $1,293,000 at the Commerce Casino, that the Commerce Casino is a gambling establishment, or that the $1,293,000 are properly characterized as "winnings." The terms of Ngo's self-exclusion form are controlling and govern the disposition of the $1,293,000 in interpleaded funds.

We reject Metis's contention that the terms of Ngo's self-exclusion form alone do not govern disposition of the interpleaded funds because a factual issue exists as to whether Commerce Casino had implemented a program with policies and procedures requiring forfeiture of the $1,293,000 to OPG. Metis bases its argument on implementing regulations that require gambling establishments such as Commerce Casino to "implement a

6

program that allows patrons to exclude themselves from gambling establishments" by using a self-exclusion request form. (§ 12464, subd. (a).) Metis's argument fails because those regulations require such self-exclusion programs to contain policies and procedures for the forfeiture of an excluded person's winnings and remittance of the winnings to OPG.

The implementing regulations in effect at the time Ngo won the $1,293,000 state that a gambling establishment's self-exclusion program must contain "[p]olicies and procedures for the forfeiture of any unredeemed jackpots or prizes won by an excluded person and the remittance of the combined value for deposit into the Gambling Addiction Program Fund for problem gambling prevention and treatment services through the State Department of Public Health, Office of Problem Gambling." (§ 12464, subd. (a)(5).)[6] The regulations require forfeiture of an excluded person's winnings and remittance to OPG. No factual issue exists as to whether the $1,293,000 in winnings forfeited by Ngo, an excluded person, should be remitted to OPG.

We also reject Metis's argument that there is a factual issue as to whether the $1,293,000 constitutes an "unredeemed jackpot" or "prize" subject to forfeiture and remittance to OPG

---

[6] The regulations in effect in 2008, when Ngo executed his self-exclusion form, similarly required the self-exclusion program to contain "policies and procedures for the forfeiture of any money or prizes won or any losses recovered by an excluded person and the remittance of such for deposit into the Gambling Addiction Program Fund for problem gambling prevention and treatment services through the Department of Alcohol and Drug Programs Office of Problem and Pathological Gambling." (former § 12464, subd. (a)(4).)

7

under the implementing regulations.[7] Metis admitted in its answer to the interpleader complaint that Ngo won a jackpot while playing baccarat at the Commerce Casino. Metis also affirmatively alleged in its answer to the complaint that Ngo "won a jackpot in the amount of the Interpleaded Funds."

Metis argues that it should have been allowed to amend its answer to retract these admissions. Metis did not, however, file a motion for leave to amend its answer, and the trial court did not rule on such a motion.[8] We therefore decline to consider the argument.

---

[7] A "jackpot" is defined in the regulations as "a gaming activity where the prize is awarded based on specified criteria occurring in the play of a controlled game." (§ 12002, subd. (t).) A "controlled game" is defined in the Penal Code as "any poker or Pai Gow game, and any other game played with cards or tiles, or both, and approved by the Department of Justice, and any game of chance, including any gambling device, played for currency, check, credit ,or any other thing of value that is not prohibited and made unlawful by statute or local ordinance." (Pen. Code, § 337j, subd. (e)(1); Bus. & Prof. Code, § 19805, subd. (g).)

[8] The record shows that Metis unsuccessfully sought to obtain a stipulation by the parties allowing it to amend its answer. In its opposition to the motion for judgment on the pleadings, Metis stated: "Metis is in the process of amending its Answer with respect to this [jackpot] allegation. To the extent the Court considers granting the OPG's Motion on the basis of Metis' Answer, Metis requests leave to amend its Answer with respect to the nature of Ngo's winnings.

8

## DISPOSITION

The order granting the motion for judgment on the pleadings is affirmed. OPG shall recover its costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
CHAVEZ


We concur:


_____, P. J.
LUI


_____, J.
ASHMANN-GERST

9