[Civ. No. 8226.   Fourth Dist., Div. Two.   Mar. 29, 1967.]

PETER LEOKE, Plaintiff and Respondent, v. COUNTY OF
SAN BERNARDINO, Defendant and Appellant.

Stanford D. Herlick, County Counsel, and Robert R. Walker, Deputy County Counsel, for Defendant and Appellant.

Peter Leoke, in pro. per., for Plaintiff and Respondent.

TAMURA, J.—Plaintiff, claiming title under a tax deed, sued to quiet title to three adjacent mining claims known as Toltec, Aztic, and Montezuma. Named as defendants were J. B. Wood (the original patentee), the State of California, the County of San Bernardino, and others. The county was the only party to appear and answer; the State merely filed a disclaimer as to the Toltec and Aztic mines and the remaining defendants defaulted. Following a trial by the court, judgment was entered decreeing plaintiff to be the owner of the three claims. The county appeals from the judgment only as it relates to the Montezuma claim. It contends that the tax deed through which plaintiff asserts ownership did not include the Montezuma mine.

The facts relevant to the issues raised on appeal are as follows:

The three claims were patented to J. B. Wood in 1904. From 1916-1917 through 1921-1922, the claims were assessed to J. B. Wood. For the year 1922-1923, however, the Montezuma claim was assessed, apparently in error, to the Calzona Silver Mining Company. It appeared that a deed had been recorded conveying a certain ''Montezuma claim'' to Calzona but the claim so transferred related to an entirely different mine in a different district. From 1923-1924, the Montezuma claim in question did not appear on the assessment rolls until its escape was discovered in 1963.

In 1942 the tax collector published a notice of tax delinquent properties which included the following:

"92484—Wood John B. Mines in Sec. 36 Tp 16 N R 9E Toltec Min Sur No. 3992

20.23 Ac                    2.93

To be sold at Public Auction, June 30, 1942. See Sale No. 90511a in addenda to this list for taxes of 1936

Aztec Min Sur No. 3992

17.68 Ac                    2.93

To be sold at Public Auction, June 30, 1942. See Sale No. 90511b in addenda to this list for taxes in 1936''

On June 5, 1942, a notice of sale of tax delinquent properties was published in which the property in question was described as follows:

"1913—Sale No. 90511a John B. Wood Mines in Sec 36 Tp 16 N R 9E Toltec Min Survey No. 3992     2.31

1914—Sale No. 90511b John B. Wood Aztec Min Sur No. 3992    2.31''

On July 23, 1942, plaintiff's predecessor in interest, Hans Locke, purchased the above described property at the tax sale and received a tax collector's deed describing the property conveyed as follows:

"Mines in Section 36 Tp 16 N, R 9 E,—Toltec Min. Sur. No 3992 and Aztec Min Sur No. 3992."

On the same date he received a certificate of redemption containing the same legal description.

Plaintiff acquired the property through a decree of distribution dated June 3, 1960.

Sometime between March and July 1963, the assessor discovered that the Montezuma claim had been omitted from the rolls. On July 25, 1963, he added it to that year's roll as an escaped assessment, assessing it to J. B. Wood. Taxes so assessed, as well as those assessed in subsequent years, have been paid by plaintiff.

A map, stipulated to be accurate, shows that the Toltec and Aztic mines were wholly within Section 36 of Range 9 East, whereas the major portion of the Montezuma mine was situated in Section 31 of Range 9 East, only a small portion being in Section 36. In 1921 a school district was formed whose boundary ran along the section line between the Toltec and Aztic claims on one side and Montezuma mine on the other. A representative of the assessor's office testified that because of the school district boundary line, it would have been the normal practice to assess the Montezuma claim as a separate parcel.

The court found that the three mines had been assessed for the years 1936-1937 through 1941-1942; were sold to the state for non-payment of taxes and were deeded to plaintiff by the tax collector's deed. The court found the tax collector's deed to be ambiguous but construed it as including the three claims.

At the outset, plaintiff questions the county's standing to appeal on the ground that it is not a party aggrieved by the judgment within the meaning of section 938 of the Code of Civil Procedure.

The county was a party of record; the only question is whether it was aggrieved by the judgment. ". . . [A]ny person having an interest recognized by law in the subject matter of the judgment, which interest is injuriously affected by the judgment, is a party aggrieved and entitled to be

heard upon appeal." (*Estate of Colton,* 164 Cal. 1, 5 [127 P. 643].) The appellant's interest "must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment." (*Hamilton* v. *Hamilton,* 83 Cal.App.2d 771, 774 [189 P.2d 722]; *Radunich* v. *Basso,* 235 Cal.App.2d 826, 829-830 [45 Cal.Rptr. 824]; *Sterling Escrow Co.* v. *Vandernoot,* 150 Cal.App.2d 735, 740 [310 P.2d 692].) ■ A person who would be bound by the doctrine of res judicata, whether or not a party of record, is a party sufficiently aggrieved to entitle him to appeal. (*Estate of Sloan,* 222 Cal. App.2d 283, 291-292 [35 Cal.Rptr. 167]; *Harris* v. *Alcoholic Beverage Control Appeals Board,* 245 Cal.App.2d 919 [54 Cal.Rptr. 346]; *Butterfield* v. *Tietz,* 247 Cal.App.2d 483 [55 Cal.Rptr. 577].) ■ On the other hand, a party having no interest in the property, the title to which is affected by a judgment, is not a party aggrieved by the judgment and may not appeal. (*Mono County Irr. Co.* v. *State,* 32 Cal.App. 184, 186-188 [167 P. 199]; *Globe Discount Co.* v. *Ostergard,* 5 Cal.2d 673 [55 P.2d 469]; *Rockey* v. *Vieux,* 179 Cal. 681 [178 P. 712]; *Hamilton* v. *Hamilton, supra,* 83 Cal.App.2d 771.)

In its answer, the county denied plaintiff's ownership but claimed no right, title, or interest in the property other than that it not be enjoined from "assessing any valid tax claim in or to said real property." In its decree, the court determined that defendant had no right, title, or interest in the property "excepting only that the defendant County of San Bernardino may assess subsequent to February 18, 1965, (date of trial) valid and equitable taxes upon said real property and collect same in accordance with law." The decree thus precludes the county from assessing the Montezuma claim for the years in which it allegedly escaped assessment, a period which may extend as far back as the tax year 1922-1923. ■ The county, having presented the issue respecting its power to assess for back taxes and the decree, having determined that the county may assess only for the years subsequent to 1965, that issue would be res judicata as between plaintiff and the county. In these circumstances, in the light of the rules heretofore stated, the county is a party aggrieved by the judgment. ■ If the court erred in concluding that the tax collector's deed and the proceedings leading to the tax sale included the Montezuma claim, the county would have the right and duty to assess the Montezuma claim for the years in which it escaped assessment. (Rev. & Tax. Code, § 531.) "Only if a delayed assessment were caused by the assessor's negli-

772

gence and would cause substantial injury to the taxpayer has it been suggested that such assessment may be improper." (*De Luz Homes, Inc.* v. *County of San Diego,* 45 Cal.2d 546, 560 [290 P.2d 544].)

Turning to the merits of the appeal, it is now settled that the interpretation of a written instrument, unless it turns upon the credibility of extrinsic evidence, is solely a judicial function. (*Parsons* v. *Bristol Development Co.,* 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) An appellate court is not bound by a construction of a written instrument by a trial court where such construction is based solely on the terms of the instrument without extrinsic evidence, where there is no conflict in the extrinsic evidence, or a determination has been made on incompetent evidence. (*Parsons* v. *Bristol Development Co., supra,* at p. 866; *Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257].)

In the instant case the issue is primarily one of construing the language used in the deed in describing the property conveyed. The extrinsic evidence, if any, consisted of other writings (notice of sale and certificate of redemption) and the uncontradicted testimony of representatives of the assessor's office. Plaintiff contends that from the fact that the Montezuma claim remained off of the tax collector's rolls from 1923 to 1963, it may be inferred that the county construed the tax deed to have included the Montezuma claim. The mere fact, however, that conflicting inferences might be drawn from uncontradicted extrinsic evidence does not make the interpretation of a written instrument a question of fact. (*Parsons* v. *Bristol Development Co., supra,* 62 Cal.2d 861 at p. 866, fn. 2 [disapproving language to the contrary in the *Estate of Rule,* 25 Cal.2d 1, 11] [152 P.2d 1003, 155 A.L.R. 1319].)

The deed and other documentary evidence clearly indicates that the tax sale involved only the Toltec and Aztic mines. The published notice of tax delinquent properties named only two mining claims, giving their respective acreages. The acreages given are precisely the acreages of the two mines named. Where the description is uncertain, the number of acres is an essential part of the description in a deed. (*Matteson* v. *McCarty,* 98 Cal.App. 45 [276 P. 414].) In addition, the deed describes the mine as being located in Section 36; the Toltec and Aztic claims were the only claims wholly in Section 36. The extrinsic evidence thus clearly supports the

conclusion that the tax sale related only to Toltec and Aztic claims.

The uncontradicted testimony of the representative of the assessor's office was that the Montezuma mine was dropped from the rolls in 1923 and was not assessed again until 1963. Thus, the case of *McCracken* v. *Hummel,* 43 Cal.App.2d 302 [110 P.2d 700], relied upon by plaintiff in the trial court, is clearly distinguishable. In that case there was no affirmative evidence that the property which was the subject of controversy had not been assessed.

In interpreting a deed, consideration should be given to the instrument as a whole, with due regard to every word and clause in the light of the circumstances surrounding its execution. (Civ. Code, § 1066; *City of Los Angeles* v. *Savage,* 165 Cal.App.2d 1, 5 [331 P.2d 111].) Plaintiff would single out the words ''Mineral Survey No. 3992'' and ignore the descriptive names of the mines and section number. A mine may be conveyed by its known name. (Civ. Code, § 1092; *Smart* v. *Peek,* 213 Cal. 452, 457 [2 P.2d 380]; *Anderson-Cottonwood Irr. Dist.* v. *Zinzer,* 51 Cal.App.2d 587 [125 P.2d 82].) The known names of the mines were a significant part of the description and cannot be ignored.

We conclude that the tax collector's deed did not include the Montezuma claim.

Judgment is affirmed as to the Toltec and Aztic claims and reversed as to the Montezuma claim.

McCabe, P. J., and Kerrigan, J., concurred.