[Civ. No. 25143. First Dist., Div. One. Feb. 16, 1970.]

LAWRENCE W. WELCH, JR., et al., Plaintiffs and Respondents, v. JOHN KAI et al., Defendants and Appellants.

## COUNSEL

Gupta & Gupta and Kamini K. Gupta for Defendants and Appellants.

Kenneth L. Johnson for Plaintiffs and Respondents.

## OPINION

**ELKINGTON, J.**—Defendants John Kai and Mamie Kai have appealed from a judgment quieting title in plaintiffs of a right to use certain beach land and a right-of-way thereto across other land, of "Paradise Cove Subdivision" in Marin County.

As to the factual basis of the judgment the parties are in substantial agreement.

Benjamin F. Lyford was an early owner of certain Marin County land about 3,000 feet of which fronted on the shore of San Francisco Bay. In 1898 he granted to the county as "a right-of-way as a public highway," a strip crossing the land, approximately 50 feet wide and very roughly paralleling the shoreline about 500 feet distant. The highway later became known as "Paradise Drive."

Thomas B. Deffebach thereafter became the owner of the Lyford property. In 1939 he and certain of his grantees filed with the county recorder a "Map of Paradise Cove Subdivision" (hereafter the "Map"). The Map had been approved by the county board of supervisors. On it the land between Paradise Drive and the shoreline was shown to be subdivided into 14 lots, some of which had been conveyed prior to the filing of the Map. Separating lots 13 and 14 of the subdivision was a continuous strip of land entitled "Lane" and "Reserved Beach." The strip might be compared with a crude lower case letter "t," the horizontal arms of which fronted along 200 feet of the bay shore at a depth of 47 feet, while the vertical section above the arms, 60 feet in width and on which a pier had been built, projected into the bay for a distance of approximately 175 feet. Its stem, the "Lane," was 20 feet wide and extended about 500 feet to Paradise Drive.

On the Map Deffebach stated: "That the portions marked 'Lane' and 'Reserved Beach' are not dedicated as open public thorofares but are reserved for the use of the owners of the lands herein shown and of the lands adjoining that may be subsequently subdivided by the present owners of said adjoining lands."

At the time the Map was filed Deffebach was also the owner of what we

shall hereafter refer to as the "inland property" to the south and across Paradise Drive from the subdivision. Following the filing of the Map, 25 parcels of land were sold from the inland property; it is not clear whether all were sold by Deffebach or if some were later subdivided from lots so sold. Such parcels as were sold by Deffebach were apparently sold singly without ever having been incorporated or delineated on any recorded or unrecorded subdivision map.

In 1963 defendants John Kai and Mamie Kai were the owners of lot 14. By a recorded quit claim deed Thomas B. Deffebach, Jr., purported to release to them the basic fee simple interest in the "Lane" and "Reserved Beach" lying between lots 13 and 14. Thereafter, by the instant action, plaintiffs, 18 in number, owning lots in the subdivision *and* parcels of the inland property, prayed that their interest in the easement be quieted and that the defendants Kai be enjoined from interfering with its use by them.

Defendants' principal contention at the trial, and here, is that only those plaintiffs who owned property in the subdivision were entitled to use the "Lane" and "Reserved Beach." It was argued that the inland property parcels of the other plaintiffs were not covered by the Map's "right-of-way" grant since those parcels were not "lands *adjoining* [the subdivided lands] that [were] subsequently subdivided by the [owner, Deffebach, et ux.] of said adjoining lands."

The trial court determined that *all* plaintiffs were entitled to the relief sought and findings and judgment were entered accordingly.

We have concluded, for reasons we shall now discuss, that the trial court correctly construed the right-of-way grant and that defendants' contention is without merit.

■ As recognized by defendants the only evidence before the trial court which can assist in the interpretation of the right-of-way conveyance is the Map itself. In such a case, where there is no qualifying evidence, the interpretation given the document by the trial court is not binding on us. It becomes our duty to make our construction of the instrument " 'in accordance with the applicable principles of law.' " (*Meyer* v. *State Board of Equalization,* 42 Cal.2d 376, 381 [267 P.2d 257]; *Leoke* v. *County of San Bernardino,* 249 Cal.App.2d 767, 772 [57 Cal.Rptr. 770].)

Our primary object in the construction of the Map's right-of-way conveyance is to ascertain and give effect to the intent of Deffebach as it existed at the time of the execution of the instrument. (*Palos Verdes Corp.* v. *Housing Authority,* 202 Cal.App.2d 827, 835 [21 Cal.Rptr. 225]; *Schroeder* v. *Wilson,* 89 Cal.App.2d 63, 66 [200 P.2d 173]; *Mitchel* v. *Brown,* 43 Cal.App.2d 217, 221 [110 P.2d 456].) ■ His intention is to be derived

by a consideration of the document as a whole rather than of detached clauses, giving due regard to every provision, clause and word, whether of grant, description, qualification or explanation and viewing it in the light of the apparent circumstances of its execution. (*City of Los Angeles* v. *Savage,* 165 Cal.App.2d 1, 5 [331 P.2d 211]; see also *Leoke* v. *County of San Bernardino, supra,* 249 Cal.App.2d 767, 773; *Ames* v. *Irvine Co.,* 246 Cal.App.2d 832, 836 [55 Cal.Rptr. 180].) ■ And we are required, as with all contracts, to give the language of Deffebach's conveyance a reasonable construction. See Civ. Code, § 1643; *Dix Box Co.* v. *Stone,* 244 Cal.App.2d 69, 77 [52 Cal.Rptr. 847].)

■ The question immediately before us is whether Deffebach's inland property on one side of Paradise Drive was "adjoining" the subdivision property on the other. In determining this question we are not concerned with some abstract connotation of the word, but rather with the meaning given it by Deffebach insofar as it can reasonably be gleaned from the Map.

Webster's Third New International Dictionary defines "adjoining" as "touching or bounding at some point or on some line: *near in space,*" and the verb "adjoin" as "To be next to: be in contact with: abut upon: *to be close,* next to or in contact with one another." (Italics added.) Although the words appear to have the more frequent connotation of contact with, or touching of, separate parts, an accepted meaning as shown by Webster's is that of closeness or nearness. It follows that the latter use of the word by Deffebach may not be deemed improbable or unreasonable.

■ From our evaluation of the Map, and the writings thereon, we conclude that Deffebach considered his inland property as *adjoining* the subdivision land, and intended that he, and the other persons who might thereafter become owners of inland property parcels, have the right to use the "Lane" and "Reserved Beach." Any other result drawn from the language of the document and the circumstances clearly inferred thereby, would in our opinion be patently unreasonable.

If we give the word "adjoining" the meaning argued for by defendants there would be little, if any, purpose for the right-of-way grant of the Map. The owners of the subdivision's 14 lots, having their own access to the beach frontage, would have little need of the "Lane" and "Reserved Beach." And under such a construction the only land "adjoining" the subdivision (except for property at either end not owned by Deffebach) would be Paradise Drive, a meaningless result, obviously unintended by Deffebach. Certainly the word "lands" of the Map's language, *"the lands* adjoining [the subdivision] that may be subsequently subdivided by the present owners of said adjoining lands" was not intended by Deffebach to refer to Paradise Drive.

Defendants cite *Hunter* v. *Roman Catholic Bishop etc. San Diego,* 128 Cal.App. 90 [16 P.2d 1048], as authority for their contention that as a matter of law lots on opposite sides of a street are not adjoining property. A study of that case indicates that the court was concerned with the meaning "contemplated and intended by the grantor" as indicated by his instrument of conveyance. "Careful consideration of the terms of the deed contract" persuaded the court that the grantor intended the lots not to be treated as adjoining. It is obvious that the court gave no absolute connotation to the word "adjoining," but instead sought, found, and applied the meaning intended by the grantor. This is precisely what we are required to do in the case before us.

Defendants further contend that the plaintiffs who now own lots in the inland property area cannot be owners of subsequently "subdivided" land as described by the Map's right-of-way conveyance. The argument seems to be: (1) that section 20j of the Real Estate Act, as in effect in 1939 (Stats. 1935, ch. 44, p. 374), defined "subdivided lands" and "subdivision" as lands "divided or proposed to be divided for the purpose of sale or lease, whether immediate or future, into five or more parcels"; (2) Deffebach's inland property was not divided or proposed to be divided for the purpose of sale or lease into five or more parcels; hence (3) his grantees are not the owners of subsequently "subdivided" lands. This contention is without merit. The Real Estate Act (§ 20j) provided that its definition was only "for the purpose of this act." ■ "Subdivide" is a commonly understood nontechnical word meaning "to divide into several parts; . . . to divide (a tract of land) into building lots." (Webster's Third New Internat. Dict.) This meaning, not the restrictive definition of the Real Estate Act, was obviously intended by Deffebach. ■ "[N]ontechnical words in a conveyance are to be given their ordinary and plain meaning unless the context shows they are used in a different sense." (*Weber* v. *Graner,* 137 Cal.App.2d 771, 775 [291 P.2d 173].) It is noted that defendants expressly disclaim any suggestion that Deffebach illegally subdivided the inland property.

■ As we have indicated, a portion of the "Reserved Beach" (above the crossing of the "t") extends 175 feet into San Francisco Bay. This portion was referred to on the Map, and at the trial, as a part of "Tide Lot 4." Defendants claim it was error to include this portion in the easement covered by the judgment. The contention is based upon a stipulation of plaintiffs that the "portion Tidelot 4" was not embraced in the quiet title relief sought. However, later finding that stipulation to have been inadvertent, plaintiffs asked to be, and were by the court, relieved therefrom. There was accordingly no error.

■ We see no error in the judgment's recital that "the defendants be

and they are hereby forever restrained and enjoined from interfering with plaintiffs' right and use of said easement and/or right of way." Such an injunction is generally part of the relief afforded in a quiet title action. (*Goldstein* v. *Prien,* 143 Cal.App.2d 123, 129 [299 P.2d 344].) And the judgment does not, as suggested by defendants, purport to exclude them from the use of the easement.

■  The unverified amended complaint was properly cured by amendment. (See *Ware* v. *Stafford,* 206 Cal.App.2d 232, 237 [24 Cal.Rptr. 153].) No error is found in the substitution, pendente lite, as parties plaintiff of Abdul Al Shama and Ann Al Shama in place of Lloyd Stark and Virginia Stark following conveyance of the Stark property to the Al Shamas. And despite defendants' contention we think it apparent from the right-of-way grant and from the judgment that the subject easement is appurtenant to the land.

■  Since there are 18 plaintiffs and 3 defendants named in the action the judgment entitled "Roy Giguere, et al., plaintiff v. Thomas B. Deffebach, Jr., et al.," without further designation of the parties elsewhere, is uncertain and confusing. It should be amended to show on its face the parties affected thereby.

The superior court will amend the judgment to designate on its face the parties affected thereby; as so amended the judgment is affirmed. Respondents will recover costs on appeal.

Molinari, P. J., and Sims, J., concurred.