Filed 2/19/14  In re Teresa F. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re TERESA F. et al., Persons Coming Under the Juvenile Court Law. | B248579 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>VICTORIA F.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. CK88299) |

APPEAL from orders of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Christopher R. Booth, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Tracey Dodds, Principal Deputy County Counsel, for Plaintiff and Appellant.

Minor Victoria F. appeals from an order of March 27, 2013 sustaining a subsequent petition,[1] based on a finding, under Welfare and Institutions Code section 300, subdivision (c),[2] she suffered or was at risk of suffering serious emotional damage due to mother's emotional abuse. She contends substantial evidence does not support the finding. We affirm.

## STATEMENT OF FACTS AND PROCEDURE

Victoria was born to J. E. (mother) and M. F. (father)[3] in 1997. She lived with mother, siblings Teresa, born in 1996, and Carlos, born in 2001,[4] a half-sibling, born in 2007, and maternal grandmother, who abused alcohol and cocaine. Mother and maternal grandmother had a long history of physically and emotionally abusing the children. Mother was aware of maternal grandmother's abuse of the children but failed to protect them. The family was the subject of numerous referrals for child abuse and neglect between 2002 and 2011, and, in 2004-2005 and 2008-2009, participated in two voluntary maintenance cases. Mother completed the programs required of her in each case.

Despite knowing what forms of discipline were appropriate and what forms inappropriate, mother punched Teresa and Victoria hard with closed fists and hit them with instruments such as a belt, clothes hanger, and bottle. Mother and maternal grandmother would punch Victoria and drag her across the floor by her hair.

Mother and maternal grandmother emotionally abused Victoria, causing her to mutilate herself and threaten to run away. They called her demeaning and derogatory names, such as "stupid," "bitch," "ho," and "good for nothing." Mother and father did

---

[1]  Subsequent petitions are governed by Welfare and Institutions Code section 342, which provides, "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition."

[2]  Hereinafter, all statutory references are to the Welfare and Institutions Code, unless specified otherwise.

[3]  Father is Victoria's presumed father.

[4]  Hereinafter, when referred to collectively, Victoria, Teresa, and Carlos will be referred to as "the children."

not get along. Father paid mother child support and wanted to spend time with the children, but mother denied him access and told Victoria that father was not interested in her. When Victoria defended father against mother's poisonous attacks, mother beat her.

Mother and maternal grandmother were particularly cruel in their treatment of Teresa. Among other things, daily for two years, Teresa was required to remain alone in a dark closet from the time she got home from school until bedtime, not allowed to eat with the family, and denied the same food as the family ate. Mother believed Teresa deserved this treatment as punishment for her disclosure to a social worker in 2008 of the abuse in the household. Mother felt that Teresa was out-of-control and believed Victoria was "following in Teresa's footsteps." Teresa wanted to die and to kill herself. Victoria would cry when Teresa was abused. Mother denied the family had any mental health concerns.

On June 10, 2011, Victoria and her siblings and half-sibling were detained from mother by the Department of Children and Family Services (Department), and a section 300 petition was filed, when Teresa reported the abuse at school. Victoria was detained in father's home. Mother was ordered to participate in parenting and anger management counseling, and Victoria was ordered to participate in counseling. Mother was granted monitored visits.

Mother denied inflicting abuse or that she failed to protect. She blamed Teresa for disclosing the abuse and causing the family's problems. Mother continued to inflict emotional abuse on the children by telling them she was suffering, would kill herself if she did not get them back in her custody, and had cancer which was getting worse as a result of her suffering. Sensitive to mother's reaction, Victoria stated she wanted to return to mother's care. Mother wanted everyone, including maternal grandmother, back together again. Father wanted to raise Victoria and her siblings. He feared that mother, who had completed rehabilitation programs in the past, would continue to fail to protect the children.

On August 9, 2011, Victoria was declared a dependent of the court based on sustained allegations under section 300, subdivisions (b) (physical abuse), (i) (cruelty),

3

and (j) (sibling abuse) that maternal grandmother's physical and emotional abuse of Victoria and her siblings, and mother's failure to protect, placed Victoria at risk of harm and failure to protect. Custody was taken from mother and Victoria was placed in home of parent-father under section 361.2.[5] Mother was granted monitored visits. Family maintenance services were ordered. Individual counseling was ordered for the children and, at the therapist's discretion, conjoint counseling.

Victoria suffered from depressive symptoms, such as isolation, irritability, tearfulness, and feelings of hopelessness and worthlessness, two to three times per day with moderate to severe intensity. She engaged in high-risk behavior, such as self-harm and non-suicidal thoughts, one to two times per month. She began receiving therapy and behavior modification services in October 2011.

During a visit in March 2012, mother was belligerent, yelled, used foul language, and appeared to want to hit Victoria. Also, in March 2012, Victoria saw pictures of mother dressed in a revealing manner on mother's Facebook page, and mother asked Victoria to respond to a comment a man had posted on the Facebook page.

On August 7, 2012, mother was granted unmonitored visits with Victoria on alternate weekends from Saturday to Sunday. Mother was ordered not to use physical discipline.

On September 4, 2012, the court terminated the August 9, 2011 home of parent-father order and ordered Victoria placed in home of parents (mother and father) under Department supervision.[6] Father's home was the primary residence and mother had

---

[5] Section 361.2 provides: "(a) When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child."

[6] Carlos was also placed in home of parents.

weekend visits. Mother had not started individual therapy or completed an anger management program.

Teresa, who had mental and emotional problems, was placed in mother's home under Department supervision on October 25, 2012.

Victoria was pregnant. The weekend visits distressed her, because mother argued with her, yelled at her, insulted her, and called her demeaning and derogatory names such as "dog," "stupid," "idiot," and "bitch whore." Mother demeaned her in public. Mother resented that Victoria stood up for father. She told Victoria that father did not love Victoria, she was not her mother, and she knew Victoria hated her. On one occasion, she told father to " 'take this bitch with you.' " Mother increased her cursing at Victoria after she learned Victoria was pregnant. Mother threw a remote control at Victoria and tried to hit her when she was pregnant. Mother did not protect Victoria from Teresa, who was violent and threatening. On occasions, mother hit Carlos, pulled him, and pushed him. Mother's moods were unstable, swinging unpredictably between calm, anger, love, and remorse.

Victoria felt depressed and had thoughts of killing herself. On December 20, 2012, she had thoughts of overdosing. Mother continued to curse Victoria and hit Carlos during visits.

On February 6, 2013, Victoria was detained from mother on the ground mother emotionally abused her and physically abused Carlos, and, on February 14, 2012, a subsequent petition was filed. At the detention hearing on February 14, 2013, Victoria was ordered released to father pending court order.[7] Mother was granted monitored visits three times a week.

Victoria indicated she was no longer feeling depressed. She recanted the disclosures she made in December 2012 of suicidal thoughts, mother's frequent cursing

---

[7] Thereafter, the September 4, 2012, home of parents order was continued in full force and effect, with Victoria released to father's care, pending the hearing on the subsequent petition.

and name-calling, and mother hitting Carlos. Mother denied she regularly cursed at Victoria, called Victoria names, or hit Carlos. Mother wanted Teresa, who had been detained from mother in February 2014, to return to her home. Mother was not enrolled in individual counseling and did not visit regularly. She visited only once from mid-February to mid-March 2013.

On March 27, 2013, a hearing was held on the subsequent petition. The court found Victoria to be a person described by section 300, subdivision (c), based on a sustained allegation that: Victoria "is suffering, or is at substantial risk of suffering, serious emotional damage evidenced by severe anxiety, depression, withdrawal, [and] aggressive behavior toward [her]self or others," in that mother "emotionally abused [her by] repeatedly call[ing] [her] demeaning and degrading names, indicating that the child is sexually promiscuous and stupid[,] and [telling] the child that she was not her mother[,]" which caused Victoria to demonstrate depression and suicidal ideation and placed Victoria at substantial risk of suffering serious emotional damage. The court terminated the September 4, 2012 home of parents order. Victoria was ordered placed in home of parent-father.

The court then held a hearing under section 364.[8] Father stated that, if jurisdiction were terminated, he would be able to obtain psychotherapy for Victoria to address the sustained allegation she suffered or risked suffering emotional damage. Finding, under section 364, that continued supervision of the children was no longer necessary, the court terminated dependency jurisdiction and stayed the termination order pending receipt of a family law order. A family law order was received granting physical custody to father,

---

[8]    When a child is not removed from parental custody, review hearings are held under section 364. (§ 364, subd. (a).) "[T]he court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn." (§ 364, subd. (c).)

primary residence with father, and one daytime, monitored visit per weekend to mother. On April 25, 2013, the stay of termination of jurisdiction was lifted.[9]

## DISCUSSION

### 1. *Standing and mootness.*

The Department contends the appeal should be dismissed, because Victoria lacks standing to appeal in that she is not aggrieved by the finding under section 300, subdivision (c) she suffered or was at risk of suffering emotional damage due to mother's emotional abuse. The Department further contends that termination of jurisdiction, and the fact Victoria was previously found to be within the court's jurisdiction under section 300, subdivision (b), render the contention that substantial evidence does not support the finding moot, because no effective relief can be given. We conclude Victoria has standing to appeal. We further conclude the appeal is not moot.

### 2. *Standing.*

"Standing to appeal is jurisdictional[,] and the issue of whether a party has standing is a question of law . . . ." (*People v. Hernandez* (2009) 172 Cal.App.4th 715, 719-720.)

California Code of Civil Procedure section 902 provides, "Any party aggrieved may appeal in the cases prescribed in this title."

Section 317.5, subdivision (b) provides, "Each minor who is the subject of a dependency proceeding is a party to that proceeding."

"Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a decision may appeal. . . . An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision. . . . These

_____

[9]    The Court takes judicial notice of the minute orders of March 28, April 11, and April 25, 2013, and the custody order filed April 25, 2013, which are contained in the clerk's transcript. (Evid. Code, § 452, subd. (d).)

7

rules apply with full force to appeals from dependency proceedings." (*In re K.C.* (2011) 52 Cal.4th 231, 236.)  To determine whether a party is aggrieved by a finding or order, we must identify the party's interest in it.  (See *ibid.*)

"A party who would be bound by res judicata is sufficiently aggrieved to assert appellate rights." (*In re Lauren P.* (1996) 44 Cal.App.4th 763, 771; accord, *Leoke v. County of San Bernardino* (1967) 249 Cal.App.2d 767, 771.) "[C]ollateral estoppel . . . [is] an aspect of the doctrine of res judicata.  Collateral estoppel precludes relitigation of issues that were necessarily decided in prior litigation, but it operates only against those who were parties, or in privity with parties, to that prior litigation and who are thus bound by the resulting judgment.  The party seeking the benefit of the doctrine, by contrast, need not have been a party to the earlier lawsuit." (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 985.)

We conclude Victoria is sufficiently aggrieved to have standing to appeal the finding that she "is suffering, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, and aggressive behavior toward herself or others."  She has an interest in the accuracy of the finding.  It was expected that father would enroll her in psychotherapy to address the finding.  The finding will inform her psychotherapeutic treatment.  If the finding is erroneous, and she is unable to obtain appellate review, she will be required to receive treatment for a condition she does not suffer from.  Moreover, given the family history in this case, it is possible Victoria's newborn child will become the subject of a dependency proceeding in San Bernardino County, where Victoria resided in father's home.  Should this occur, the finding Victoria suffered serious emotional damage will have a collateral estoppel effect, supporting one of the elements of a jurisdictional finding under section 300, subdivision (b) that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of . . . the inability of the parent . . . to provide regular care for the child due to the parent's . . . mental illness." (See *In re Joel H.* (1993) 19 Cal.App.4th 1185, 1193.)

3. *Mootness.*

Respondent contends the issue is moot, because no effective relief can be granted, in that jurisdiction was terminated and, in any event, Victoria was already found to be a child described by section 300, subdivision (b).

" 'A case is moot when any ruling by this court can have no practical impact or provide the parties effectual relief. [Citation.]' " (*Carson Citizens for Reform v. Kawagoe* (2009) 178 Cal.App.4th 357, 364.)

"As a general rule, an order terminating juvenile court jurisdiction renders an appeal from a previous order in the dependency proceedings moot. [Citation.] However, dismissal for mootness in such circumstances is not automatic, but 'must be decided on a case-by-case basis.' [Citations.]" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1488.) Termination of jurisdiction does not render an appeal from a previous order moot if the order would have negative consequences for the appellant. (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 716.)

An appellate court may decline on the ground of mootness to address the evidentiary support for any remaining jurisdictional findings once a single finding has been found to be supported by the evidence. (See *In re I.J.*, (2013) 56 Cal.4th 766, 773.)

We conclude the issue is not moot, as reversal of the finding could give Victoria effective relief and have a practical effect on future proceedings. An erroneous finding would distort the therapeutic process. It would provide a factual basis for an element of jurisdiction under section 300, subdivision (b), should Victoria's offspring become the subject of a dependency petition in the future.

4. *Substantial evidence.*

Victoria contends substantial evidence does not support the finding she was currently suffering or at risk of suffering serious emotional damage under section 300, subdivision (c). We disagree with the contention.

In determining whether an order is supported by substantial evidence, "we look to see if substantial evidence, contradicted or uncontradicted, supports [it]. [Citation.] In making this determination, we draw all reasonable inferences from the evidence to

9

support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court. [Citation.]" (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) "We do not reweigh the evidence or exercise independent judgment, but merely determine if there are sufficient facts to support the findings of the trial court." (*In re Matthew S.* (1988) 201 Cal.App.3d 315, 321.) Thus, the pertinent inquiry is whether substantial evidence supports the finding, not whether a contrary finding might have been made. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Section 300, subdivision (c) provides: "The child is suffering serious emotional damage, or is at substantial risk of suffering serious emotional damage, evidenced by severe anxiety, depression, withdrawal, or untoward aggressive behavior toward self or others, as a result of the conduct of the parent or guardian or who has no parent or guardian capable of providing appropriate care."

To prove a child comes within section 300, subdivision (c), "three elements [must be proved]: (1) serious emotional damage as evidenced by severe anxiety, depression, withdrawal or untoward aggressive behavior or a substantial risk of severe emotional harm if jurisdiction is not assumed; (2) offending parental conduct; and (3) causation."[10] (*In re Brison C.* (2000) 81 Cal.App.4th 1373, 1379.)

"[T]he fact that a child is currently protected from further abuse simply because the child already is under the jurisdiction of the juvenile court cannot preclude the court from finding, based upon new evidence of past abuse, that the child remains at risk of abuse. The question to be asked in such a case is whether, in the absence of the state's intervention, there is a substantial risk that the child will be abused." (*In re Carlos T.* (2009) 174 Cal.App.4th 795, 806.) A parent's failure to acknowledge the abuse or the harm it caused makes it "likely [the parent] would continue to abuse the children if he had access to them." (*Ibid.*)

---

[10]    Victoria acknowledges substantial evidence supports the offending parental conduct and causation elements of a finding under section 300, subdivision (c).

There was evidence that, while she was in mother's custody or had unmonitored contact with mother, Victoria suffered from moderate to severe depressive symptoms two to three times per day, wanted to kill herself, considered taking a drug overdose to kill herself, and mutilated herself by cutting, as a result of mother's emotional abuse. Shortly after the most recent report of her depression and suicidal thoughts, she was detained from mother and protected from unmonitored contact with mother. Mother denied she emotionally abused Victoria. Mother was not participating in therapy to deal with her role in the emotional damage Victoria suffered. This is substantial evidence that, without the court's orders terminating the grant of physical custody to both parents, giving father sole physical custody, and requiring mother's contact with Victoria to be monitored, there is a substantial risk mother will continue her emotional abuse and Victoria will suffer emotional damage as a result. Thus, substantial evidence supports the finding under section 300, subdivision (c).

## DISPOSITION

The finding and orders of March 27, 2013 are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

KLEIN, P. J.

We concur:

KITCHING, J.

ALDRICH, J.

11