Filed 6/27/23  Rainey v. Nevada Irrigation District CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

| | |
|---|---|
| MICHAEL RAINEY et al., | C096010 |
| Plaintiffs and Appellants, | (Super. Ct. No. CU19084309) |
| v. | |
| NEVADA IRRIGATION DISTRICT, | |
| Defendant and Respondent. | |

Plaintiffs Michael Rainey and Emerson Pachaud sued defendant Nevada Irrigation District (District) for inverse condemnation, private nuisance, and dangerous condition of public property (complaint) due to water leaking and/or seeping onto their properties from an irrigation ditch maintained, managed, operated, and owned by the District.  The District filed a motion for summary judgment or, in the alternative, summary adjudication (motion).  The trial court granted the District's motion and dismissed the complaint, finding a release of liability in a deed signed in 1963 by plaintiffs' predecessors in interest and recorded against plaintiffs' properties estopped plaintiffs from pursuing

1

damages against the District and is a covenant running with the land such that it binds plaintiffs and bars their complaint against the District. Plaintiffs appeal.

Plaintiffs argue: (1) the release of liability in the deed is not a covenant running with the land; (2) the release of liability does not shield the District from liability for active negligence and does not preclude claims for damage caused by water leaking out of the irrigation ditch; and (3) the grant in the deed does not estop plaintiffs from suing the District for damage caused by its negligence. We agree reversal is required.

Plaintiffs pled damages arising from, among other things, the District's negligent maintenance of and repairs to the irrigation ditch; the District did not attempt to refute or disprove those negligence allegations in its motion. It has long been established "[t]he ordinary rule is that an irrigation district is bound to exercise reasonable care in the construction and maintenance of its ditches and canals, and when property is injured by seepage or flooding due to faulty construction or negligent maintenance of an irrigation ditch or canal, the irrigation district is liable for the resulting damage." (*Ketcham v. Modesto Irrigation Dist.* (1933) 135 Cal.App. 180, 186.) The question presented is thus whether the District's affirmative defense of waiver based on the release of liability in and estoppel doctrine associated with the 1963 deed conclusively establishes that the District is entitled to judgment in its favor. As we explain, neither of the bases of waiver relied upon by the District applies to the *negligent* conduct alleged by plaintiffs. Accordingly, because plaintiffs' negligence allegations were not negated, summary judgment in the District's favor must be reversed.

FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' properties are located south and downhill from an irrigation ditch maintained, managed, operated, and owned by the District. Rainey and Pachaud are neighbors.

In their complaint against the District, plaintiffs generally allege: a 2016 leak in the District's irrigation ditch allowed water to flow onto Pachaud's property and then

2

onto Rainey's property; around the same time, subsurface water began seeping out of banks on plaintiffs' properties; the District sent workers to fix the leak in the irrigation ditch after Pachaud reported the leak; the leak, however, reappeared shortly thereafter, again resulting in water flowing onto Pachaud's property and subsurface water seeping out of the banks on plaintiffs' properties; the water continued to leak onto plaintiffs' properties from the end of 2016 through 2017, saturating the ground and causing mudslides; the District sent employees to inspect the slide area and the location of the leak in May 2017; in June 2017, the District informed Rainey that it would fix the leak after the irrigation season; the District sent workers to repair the leak in the fall of 2017; in 2018, Pachaud arranged to have repairs done to his property and the District paid for some of those repair costs; despite the District's repairs to the irrigation ditch, water continues to appear on plaintiffs' properties, causing further damage; the District's "negligence in maintaining and repairing leaks from the . . . irrigation ditch has caused and will continue to cause irreparable harm to [plaintiffs], in that the oversaturated soils on their properties continue to slide."

Plaintiffs assert three causes of action against the District—inverse condemnation, private nuisance, and dangerous condition—further alleging, among other things: "The leaking that caused the damage to [p]laintiffs [*sic*] properties is the result of the design and negligent maintenance of the ditch by [the District]"; the District "has so designed, maintained and used the . . . irrigation ditch as to create an unreasonably dangerous condition that has damaged [p]laintiffs' [p]roperties and which also obstructs and interferes with [p]laintiffs' comfortable enjoyment of life and property"; and the District "delayed making any repairs and then made inadequate and negligent repairs that failed to address the redirection of the existing spring that is a direct result of the leak-caused slides."

The District filed the motion on essentially six grounds: (1) Plaintiffs' complaint is barred by a release of liability provision in a 1963 deed recorded against plaintiffs'

3

properties in 1965 because the provision constitutes a covenant running with the land; (2) Pachaud waived the right to seek damages from the District by accepting and recording a parcel map and offer of dedication against his property in 2008; (3) plaintiffs are estopped from seeking damages based on the 1963 deed, and Pachaud is further estopped from seeking damages under the 2008 parcel map and offer of dedication; (4)-(5) plaintiffs' nuisance and dangerous condition causes of action are barred due to their failure to comply with the Government Claims Act (Gov. Code, § 810 et seq.); and (6) Rainey's nuisance and dangerous condition causes of action are barred because the applicable statute of limitations had run. The District did not raise any arguments or present any evidence pertaining to the nature or cause of the alleged leak or seepage, nor did it address plaintiffs' allegations of inadequate and/or negligent design, maintenance, and/or repair of the irrigation ditch.

Plaintiffs opposed the motion on several grounds, including that the release of liability in the 1963 deed is not a covenant running with the land "because it was not made 'for the direct benefit of the' " land; by its terms the release of liability does not apply to the claims in their complaint because the "damages were caused by water leaking from the irrigation ditch, and not seepage"; and the release of liability does not apply to their claims of active negligence.

The trial court granted the District's motion on the affirmative defense of waiver and dismissed the case. It is undisputed that, "[i]n 1963, [the District] convey[ed] its interest in real property in the vicinity of the [irrigation ditch] to Marvin and Dorothy Simmons" via a deed. The 1963 deed "was made subject to a Reservation of Easement in favor of [the] District for its Red Hill Canal water transmission facility" that provided: "This conveyance is made on [the] condition that the . . . District will only supply water in its existing laterals and pipe lines, and all facilities for obtaining water therefrom and for transporting the same to the land conveyed shall be provided by [the property owner], their heirs, successors and assigns at their expense and said district shall not be liable

4

therefore.  This conveyance is made on the further condition and consideration that [the District], its agents and employees shall not be liable for any damage that may hereafter occur to said property by reason of seepage.  These conditions shall be construed as covenants running with the land." (Boldface omitted.)  The District recorded the 1963 deed in 1965.  "The 1963 Reservation of Easement appears as a matter of record on title to the Pachaud [p]roperty and the Rainey [p]roperty."

The trial court explained "[w]aiver is a recognized defense to claims for inverse condemnation, private nuisance, and dangerous condition" and plaintiffs' "predecessors waived the right to seek damage[s] for seepage" in the 1963 deed because the release of liability provision is a covenant running with the land.  The trial court further found plaintiffs are estopped from prosecuting any action for past or present damages that may have occurred or any future damages that are reasonably expected to occur as a result of the irrigation ditch because plaintiffs' predecessors in interest granted the District a right of way for the irrigation ditch.

The trial court rejected plaintiffs' request "to limit the waiver to only 'natural seepage,' as opposed to 'negligent seepage,' " finding "[t]he clear language of the waiver waives all liability 'for any damage that may hereafter occur to said property by reason of seepage' " and, "even if the seepage was caused by the negligence of [the District], [p]laintiffs' predecessors in interest were paid, through their selling price, for the cost of such waiver."  The trial court further rejected plaintiffs' contention that the release of liability provision in the 1963 deed does not apply because "the damage to their properties is due to leaks, not seepage."  The trial court looked at dictionary definitions of seepage and leak and found, "[S]eepage, by definition, includes leakage."  Plaintiffs appeal.

DISCUSSION

Summary judgment should be granted when "all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a

5

judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843.)

A defendant moving for summary judgment bears the initial burden of proving that there is no merit to a cause of action by showing "that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to th[at] cause of action." (Code Civ. Proc., § 437c, subd. (p)(2); see *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1037.) Once a defendant has made such a showing, " 'the burden shifts to the [plaintiff] . . . to show that a triable issue of one or more material facts exists as to that cause of action or' " as to a defense to the cause of action. (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 849.) A triable issue of material fact exists where "the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Id.* at p. 850.)

We review the trial court's decision de novo (*Johnson v. City of Loma Linda* (2000) 24 Cal.4th 61, 65-66) and make "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law" (*Iverson v. Muroc Unified School Dist.* (1995) 32 Cal.App.4th 218, 222). In doing so, we "[consider] all the evidence set forth in the moving and opposition papers except that to which objections have been made and sustained." (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 334.) We view the evidence and the inferences reasonably drawn from the evidence "in the light most favorable to the opposing party." (*Aguilar v. Atlantic Richfield Co.*, *supra*, 25 Cal.4th at p. 843.)

6

Our independent review reveals reversal is appropriate because the 1963 deed and the release of liability contained therein do not bar or estop plaintiffs' allegations of negligence in support of their causes of action against the District.

I

*Plaintiffs Are Not Estopped From Seeking Damages Against The District*

Plaintiffs argue the trial court erred in finding they are estopped from seeking damages against the District based on the grant and reservation in the 1963 deed. Generally, " ' "whenever a grant of a right of way is executed by a land owner he thereby estops himself from afterward prosecuting any action for the past, present, or future damages that may have occurred, or *reasonably be expected to occur*, by reason of the necessary, natural, and ordinary use of the utility or public service for which the right of way is granted." ' " (*Albers v. County of Los Angeles* (1965) 62 Cal.2d 250, 265.)  Thus, generally, an action for damage arising from the natural and ordinary seepage of water from a ditch within a right of way previously granted for public use does not lie. (*Hume v. Fresno Irrigation Dist.* (1937) 21 Cal.App.2d 348, 351; *Williams v. Sutter-Butte Canal Co.* (1947) 82 Cal.App.2d 100, 103.)  A plaintiff is not, however, estopped from maintaining an action for damage resulting from negligent conduct.  As pertinent here, "a canal company is [therefore] liable for all damages occasioned by the negligent operation of its irrigating system irrespective of whether a right of way has or has not been granted for the construction of its canals or irrigating ditches through the premises involved." (*Hunt v. Sutter-Butte Canal Co.* (1924) 66 Cal.App. 363, 368.)

While we agree with the District that the parties may have "anticipated seepage from the canal" onto plaintiffs' properties to some extent based on the language in the release of liability, the District did not counter plaintiffs' *negligence* allegations pertaining to the design and maintenance of the irrigation ditch or the repairs performed by the District.  The District does not present any argument to the contrary on appeal. Whether the District was negligent in designing, maintaining, and/or repairing the

7

irrigation ditch thus remains in dispute and precludes summary judgment on the ground of estoppel. (Cf. *Sutro Heights Land Co. v. Merced Irrigation Dist.* (1931) 211 Cal. 670, 694-696 [estoppel applied where the evidence showed "the canals and laterals were constructed with care, skill and prudence and in a workmanlike manner"].)

## II

*The Release Of Liability Does Not Apply To The Active Negligence Allegations*

Plaintiffs assert the release of liability in the 1963 deed is not a covenant running with the land, as the trial court found, and it does not bar the claims that the District was actively negligent. Because we agree the release of liability does not apply to active negligence and the District failed to negate plaintiffs' claims of active negligence, we need not and do not address whether the release of liability is a covenant running with the land.

We analyze grant deeds under the same rules applicable to contracts. (*Canyon Vineyard Estates I, LLC v. DeJoria* (2022) 78 Cal.App.5th 995, 1003.) "Contract interpretation is a question of law." (*Ibid.*) " 'The fundamental goal of contract interpretation is to give effect to the mutual intention of the parties.' " (*Ibid.*) "The task of the reviewing court has [thus] been described as placing itself in the position of the contracting parties in order to ascertain their intent at the time of the grant." (*Machado v. S. Pac. Transp. Co.* (1991) 233 Cal.App.3d 347, 352.) We are tasked with giving the language in the instrument a reasonable construction (*Welch v. Kai* (1970) 4 Cal.App.3d 374, 379) and "are required to presume that parties to a contract both know and have in mind that ' "all applicable laws in existence when an agreement is made . . . necessarily enter into the contract and form a part of it, without any stipulation to that effect, as if they were expressly referred to and incorporated." ' " (*Roldan v. Callahan & Blaine* (2013) 219 Cal.App.4th 87, 93-94.)

We begin our review with an examination of the language in the release of liability, which provides: "This conveyance is made on the further condition and

8

consideration that [the District], its agents and employees shall not be liable for any damage that may hereafter occur to said property by reason of seepage." (Boldface omitted.) Read in the abstract, the release appears to be broadly worded to encompass "any" claims of damage resulting from seepage. We note however that, prior to 1963, when the parties entered into the release of liability, it had been the law (and continues to be the law) that " 'to be sufficient as an exculpatory provision against one's own negligence, the party seeking to rely thereon must select words or terms clearly and explicitly expressing that this was the intent of the parties' " and "where the parties fail to refer expressly to negligence in their contract such failure evidences the parties' intention not to provide for [exculpation of] negligent acts." (*Vinnell Co. v. Pacific Electric Railway Co.* (1959) 52 Cal.2d 411, 414-415 (*Vinnell*).)

More specifically, "[f]or an agreement to be construed as precluding liability for 'active' or 'affirmative' negligence, there must be express and unequivocal language in the agreement which precludes such liability." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal.App.3d 914, 932-933, citing *Vinnell*, *supra*, 52 Cal.2d at pp. 414-415, *Goldman v. Ecco-Phoenix Electric Corp.* (1964) 62 Cal.2d 40, 48-49.) "An agreement which seeks to limit liability generally without specifically mentioning negligence is construed to shield a party only for passive negligence, not for active negligence." (*Salton Bay Marina*, at p. 933.)

"Passive negligence is found in mere nonfeasance, such as the failure to discover a dangerous condition or to perform a duty imposed by law. [Citations.] Active negligence, on the other hand, is found if an indemnitee has personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform. [Citations.] 'The crux of the inquiry is to determine whether there is participation in some manner by the person seeking indemnity in the conduct or omission which caused the injury beyond the mere failure to perform a duty imposed

9

upon him by law.' " (*Rossmoor Sanitation, Inc. v. Pylon, Inc.* (1975) 13 Cal.3d 622, 629.)

Here, the release of liability made no mention of negligence and plaintiffs' causes of action were based, in part, on allegations of active negligence. Indeed, plaintiffs alleged their damage arose from the District's design of, negligent maintenance of, and negligent repairs to the irrigation ditch. Such acts constitute active negligence, and the District did not attempt to negate those allegations in its motion.

We are aware, as the District points out, that "an analysis based on the 'active-passive dichotomy' or on the absence or presence of a specific reference to 'negligence' is not dispositive" where " 'the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement.' " (*Hohe v. San Diego Unified Sch. Dist.* (1990) 224 Cal.App.3d 1559, 1567.) That is because "[w]hether a release bars recovery against a negligent party 'turns primarily on contractual interpretation, and it is the intent of the parties as expressed in the agreement that should control." (*Ibid.*) Relying on this principle, the District asserts without any explanation that "[t]he release speaks for itself and describes the circumstances (seepage) intended by the covenanting parties to not give rise to liability on the part of [the District]." Not so.

We find nothing in the record that shows the circumstances *here* dictate that the release of liability extends to active negligence. At best, the language in the release is ambiguous. We cannot say the language in the release of liability in and of itself bars active negligence claims as a matter of law.[1] As explained in *Hohe*, a case upon which the District relies: "Where the intention of the parties on the face of [a] release[] is ambiguous, a triable factual issue is presented. Any doubts as to the propriety of granting

---

[1] The parties did not introduce any extrinsic evidence regarding the parties' intent at the time of executing the release of liability.

the motion for summary judgment should be resolved in favor of the party opposing the motion." (*Hohe v. San Diego Unified Sch. Dist.*, *supra*, 224 Cal.App.3d at p. 1568.) "The language of an agreement in order to exclude liability for negligence must be 'clear and explicit' and 'free of ambiguity or obscurity.' [Citation.] The law generally looks with disfavor on attempts to avoid liability or to secure exemption for one's own negligence. [Citation.] The law requires exculpatory clauses to be strictly construed against the party relying on them." (*Salton Bay Marina, Inc. v. Imperial Irrigation Dist.*, *supra*, 172 Cal.App.3d at p. 932.)

*Harvey Machine* also does not assist the District. (*Harvey Machine Co. v. Hatzel & Buehler, Inc.* (1960) 54 Cal.2d 445 (*Harvey Machine*).) In that case, "[t]he defendants, construction contractors, appeal[ed] from a judgment declaring that they [were] obligated to indemnify the plaintiffs by virtue of a hold harmless and indemnification clause contained in an agreement whereby the defendants, with other contractors, undertook to construct a new industrial plant in its entirety for the plaintiff Harvey Machine Company, Inc." (*Id.* at p. 446.) The agreed upon statement of facts provided that, "pursuant to the terms of a written agreement, the defendants undertook to make certain electrical installations in Harvey's plant then under construction. While the defendants and other construction contractors were thus engaged, Sam Mann, an employee of the defendants while engaged in his duties on the premises, fell into an open elevator pit. The pit and elevator comprised a part of the overall installation on which Mann was employed. He sustained injuries for which he recovered a workmen's compensation award pursuant to his status as an employee of the defendants. He thereafter commenced an action against Harvey as an alleged tort feasor, in which he [sought] to recover $ 75,000 general damages and other unspecified sums for loss of earnings and medical expenses incurred as a result of his fall.

"Harvey, upon commencement of the action by Mann, made demand on the defendants to defend the action under the aforesaid hold harmless and indemnity

11

provisions of the agreement. The defendants refused on the ground, apparently, that those provisions d[id] not provide protection for the indemnitee against its own acts of negligence." (*Harvey Machine*, *supra*, 54 Cal.2d at p. 446.) Our Supreme Court assumed for its purposes "that Mann's fall into the pit was a consequence of some breach of duty owed to Mann on the part of Harvey." (*Id*. at p. 447.) The court explained the question presented was, as in *Vinnell*, *supra*, 52 Cal.2d 411, whether the indemnity clause operated "to exculpate the indemnitee from the consequences of its own breach of duty where the clause d[id] not expressly state that the damage so caused [wa]s intended to be included in the coverage of the clause." (*Harvey Machine*, at p. 447.)

Our Supreme Court explained: "In the *Vinnell* case it was held that the agreement therein could not be construed to provide that the parties intended to protect the indemnitee against its affirmative acts of negligence, where such protection was not expressly provided. In that case a railroad granted permission to a construction contractor to build a drain ditch across the railroad's yard, and exacted an indemnification provision in return. While the ditch was under construction the railroad continued to operate in the yard, and negligently switched a string of its cars into an excavation. Significant factual differences exist in the present case. Here the indemnitee did not continue to maintain independent operations on the premises whereon construction was in progress. The injuries did not result from some conduct or omission unrelated to the indemnitors' performance. Most significantly of all, the claimed breach of duty on the indemnitee's part was not active, affirmative misconduct, but at most passive negligence -- a failure to act in fulfillment of a duty of care which devolved upon the indemnitee as the owner or occupier of land. Finally, the misconduct does not relate to some matter over which the indemnitee exercised exclusive control. In the *Vinnell* case the negligent switching of the engine and cars was not only within the indemnitee's exclusive control, but was also an act unrelated to the indemnitor's performance. In the present case the elevator pit was a part of the structure connected with the indemnitors' performance, and

the indemnitors undertook at least some responsibility for making their employee's environment a safe place to work when they agreed, as stated, 'to comply with all pertinent provisions and [s]afety requirements of [f]ederal and [s]tate [l]aws[,] building codes[,] and regulations. . . .'

"The situation here presented, where Harvey contracted for the complete construction of its plant and exacted from the defendants, and through them, from the subcontractors, hold harmless and indemnification clauses in the case of injuries to the defendants' employees, requires a realistic conclusion that the parties knowingly bargained for the very protection here in issue. Where . . . the contractors had practical control of the structures on the premises, any negligence for the condition of the structures would obviously not be that of the owner alone. The accident, in these circumstances, was one of the risks, if not the most obvious risk, against which Harvey sought to be covered. This realistic approach cannot be sacrificed to the formalism of rules of construction where the circumstances are inconsistent with the need of an application of such rules in order to determine the parties' intentions. Accordingly it must be concluded that the injuries to Mann which resulted from the condition of the premises during construction must be deemed to be within the contemplation of the parties when it was agreed that Harvey was to be held harmless 'against liability . . . for bodily or personal injuries . . . sustained by any person or persons including employees of [the defendants], and arising from the use of the premises, facilities or services of Harvey.'

"In view of the distinctions hereinbefore drawn, the present decision is not inconsistent with the views expressed in the opinion in . . . *Vinnell* . . . , *supra*[, 52 Cal.2d 411]. As noted particularly, the conduct there involved an affirmative, unrelated act of negligence on the part of the indemnitee. It was stated therein, and the decision turned on the holding, that 'courts have consistently adopted the position that indemnification claims are to be strictly construed against the indemnitee in cases involving affirmative

13

acts of negligence on his part.  (Citations.)'  Throughout the opinion, however, it is manifest that it is the intent of the parties which the court seeks to ascertain and make effective.  Where . . . the circumstances of the claimed wrongful conduct dictate that damages resulting therefrom were intended to be dealt with in the agreement, there is no room for construction of the agreement.  It speaks for itself."  (*Harvey Machine*, *supra*, 54 Cal.2d at pp. 448-449, italics added.)

In contrast to the passive negligence allegations in *Harvey Machine*, plaintiffs in this case have asserted active negligence allegations against the District.  *Harvey Machine* does not dictate that the District be released from liability for such allegations.

For these reasons, we reverse the summary judgment in the District's favor.

III

*We Decline To Consider The Propriety Of The Remaining Grounds In The Motion*

We decline the District's invitation to rule upon its arguments pertaining to the Government Claims Act (Gov. Code, § 810 et seq.) in the first instance.  We are aware that we *may* affirm the grant of summary judgment on any ground not relied upon by the trial court if the issue is fully briefed by the parties with an opportunity to present additional evidence on the issue.  (*Syngenta Crop Protection, Inc. v. Helliker* (2006) 138 Cal.App.4th 1135, 1155; Code Civ. Proc., § 437c, subd. (m)(2).)  We are not, however, required to do so.  (*Adams v. Pacific Bell Directory* (2003) 111 Cal.App.4th 93, 100-101 [declining to consider alternate grounds for affirmance and remanding for the trial court to consider such grounds in the first instance].)

14

## DISPOSITION

The judgment is reversed.  The case is remanded to the trial court to consider the additional grounds urged for the grant of summary judgment.  Plaintiffs are awarded their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
ROBIE, Acting P. J.


We concur:


/s/
HULL, J.


/s/
HORST, J.*

---

\*      Judge of the Placer County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.